(110 App. Div. 133.)

NATIONAL CONTRACTING CO. v. HUDSON RIVER WATER POWER CO.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

1. APPEAL—PLEADING—DEMURRER—REVERSAL—EFFECT OF DECISION.

Where plaintiff demurs to a defense under Code Civ. Proc. § 494, on the ground of insufficiency, thereby admitting the facts therein alleged, and an order sustaining the demurrer is reversed on appeal, and it is adjudged without reserving leave to plaintiff to withdraw the demurrer that the same be overruled, and the demurrer is never in fact withdrawn. defendant is entitled as a matter of law to a final judgment dismissing the complaint.

2. PLEADING—WITHDRAWAL OF DEMURRER—LEAVE OF COURT.

A demurrer cannot be withdrawn without leave of court, and whether such leave shall be granted or not is within the discretion of the trial court.

3. ACTION—PREMATURE COMMENCEMENT.

An action for a breach of contract cannot be based on a demand made after the commencement of such action.

4. CONTRACTS—BREACH—RENUNCIATION OF CONTRACT.

    In order that a renunciation or repudiation of a contract by one party may justify the other in treating it as a breach, it must be a clear and distinct repudiation of obligations under the contract.

5. SAME.

    A contract for the construction of a stone dam by plaintiff for defendant provided that it was to be constructed in accordance with the engineer's general plans and such further working plans as should be furnished by the engineer during the progress of the work. It further provided that the engineer might make alterations in the work, and that on disagreement between the parties the engineer should be a referee and his decision should be final. Defendant notified plaintiff of an alteration in plans which contemplated an earth section within a masonry wall, instead of a wall completely of stone. Plaintiff denied defendant's right under the contract to make such a radical change in the plans, and refused to agree to the change and tendered performance of the contract as originally drawn. Thereupon defendant suggested a reference to the engineer and later proposed a conference, and further proposed the postponement of an ultimate decision of the question, and asked plaintiff to do some necessary work under the contract pending the determination of the dispute between them. No reference was had and plaintiff refused to do any further work on the dam unless the question as to the proper construction of the contract was immediately determined in its favor, and refused to consent to any delay in order to enable defendant to determine engineering problems which confronted it. *Held*, that there was no such breach of the contract by defendant as to entitle plaintiff to abandon the contract and sue for damages.

Appeal from Judgment on Report of Referee.

Action by the National Contracting Company against the Hudson River Water Power Company. From a judgment for plaintiff, defendant appeals. Reversed.

See 94 N. Y. Supp. 187.

Argued before O'BRIEN, P. J., and PATTERSON, CLARKE. INGRAHAM, and LAUGHLIN, JJ.

Richard L. Hand, for appellant.
L. Laflin Kellogg, for respondent.

INGRAHAM, J. This action is brought to recover damages for the breach of a contract for the construction of a dam across the Hudson river at Glens Falls, in the state of New York. The action was tried before a referee, who reported in favor of plaintiff, and judgment was entered on that report, from which the defendant appeals. Upon the trial before the referee, and after the plaintiff had opened his case, counsel for the defendant made a motion to dismiss the complaint upon several grounds. Upon that motion he called the attention of the court to the judgment of this court entered upon a remittitur of the Court of Appeals overruling a demurrer interposed by the plaintiff to a separate defense to the entire cause of action set up in the complaint, and claimed that that judgment was an adjudication that a defense pleaded to the plaintiff's cause of action was a good defense, as it conclusively admits the absence of a condition which the court adjudged was essential to the plaintiff's right to recover, and, facts alleged being conclusively admitted by the demurrer, the judgment entered is in effect an adjudication that the defendant had a good defense to plaintiff's cause of action, and that the defendant was entitled

to a dismissal of the complaint. That motion was denied, to which the defendant excepted.

The record thus produced by the defendant was a judgment overruling a demurrer to the third separate defense in the defendant's answer. The defendant, in answering the complaint, for a third answer and defense to the amended complaint herein alleges:

"That the plaintiff and the defendant entered into a contract in writing as hereinbefore, and in answer or division thereof marked 1 alleged, that by the terms of said contract it was, among other things, expressly provided and agreed as follows: To prevent all disputes and litigation, it is further agreed by and between the parties to this contract that the engineer, William Barclay Parsons, or H. De B. Parsons, or their successors, either or both of them, shall be referee in all cases to determine all the questions that may in any way arise under this contract and the amount or the quantity of the work which is to be paid under this contract, and to decide all questions which may arise relative to the fulfillment of this contract on the part of the contractor, and the findings, estimates, and decisions of said engineers, or either of them, shall be final and conclusive. That the plaintiff has neither obtained or requested any finding, estimate, or decision of the engineers aforesaid, or either of them, nor has it requested this defendant to obtain the same or to submit any of the matters in question to them."

It will be noticed that this was pleaded as a separate and distinct defense to the cause of action upon which plaintiff sought to recover. To this defense the plaintiff demurred upon the ground that it was insufficient in law on the face thereof. By that demurrer the plaintiff admitted the truth of the facts alleged in the third answer and defense, and claimed that such defense was insufficient as an answer to the plaintiff's cause of action. The issue of law thus came on for trial at Special Term, where the demurrer was sustained, with leave to the defendant to serve an amended answer amending this third defense, and interlocutory judgment was entered thereon. The defendant appealed from the interlocutory judgment to this court, where such judgment was affirmed. The defendant then applied to this court for leave to appeal to the Court of Appeals, which was granted, and the following question certified:

"Is the third answer and defense set up in the defendant's answer to the amended complaint herein insufficient in law upon the face thereof?"

Leave having been granted and the question certified to the Court of Appeals for determination, the defendant appealed, and upon that appeal the judgment of this court was reversed and the demurrer overruled. The remittitur from the Court of Appeals was that that court "did order and adjudge that the orders of the Appellate Division and Special Term of the Supreme Court appealed from herein be, and the same hereby are, reversed and questions certified answered as stated in the opinion." And it was further ordered that the record and proceedings in the Court of Appeals be remitted to the Supreme Court in the First Department, there to be proceeded upon according to law. The opinion of the Court of Appeals is reported in 170 N. Y. 439, 63 N. E. 450, and the conclusion which that court arrived at was:

"If, then, the 'third' defense simply pleads plaintiff's noncompliance with the essential condition precedent, it cannot be said to be insufficient. As has been stated, the fact that we have not the whole agreement before us renders it difficult, if not impossible, to accurately construe the precise mean-

ing of this clause of the contract, and, in view of the favorable inferences to which the defendant is entitled in testing the sufficiency of his pleading, we are constrained to hold that the demurrer to this defense was not well taken. The certified question is therefore answered in the negative, and the order of the Appellate Division and interlocutory judgment of the Supreme Court should be reversed, with costs in all courts."

Upon the return of the record to this court, an order was entered making the judgment of the Court of Appeals the judgment of this court, and upon that order a final judgment was entered by which it was "ordered, adjudged, and decreed that the interlocutory judgment entered herein on the 2d day of May, 1902, and the interlocutory judgment of affirmance entered herein on the 3d day of February, 1902, sustaining the demurrer interposed by the plaintiff to the third answer and defense set up in the defendant's answer herein on the ground that the same is insufficient in law upon the face thereof, be, and the same hereby are, reversed. And it is further ordered, adjudged, and decreed that the demurrer of the plaintiff herein to the third answer and defense set up in the defendant's answer herein, on the ground that the same is insufficient in law upon the face thereof, be, and the same hereby is, overruled." And a judgment for costs was awarded in favor of the defendant against the plaintiff.

By section 494 of the Code of Civil Procedure the plaintiff may demur to a counterclaim or defense consisting of new matter contained in the answer, upon the ground that it is insufficient in law upon the face thereof. And the plaintiff demurring to this separate defense, admitting the facts therein alleged, and conceding these facts to be true, the question presented was whether such facts thus admitted were a defense to the plaintiff's cause of action. That question was determined in favor of the defendant by a judgment of this court upon a remittitur from the Court of Appeals. No leave to withdraw the demurrer was reserved to the plaintiff by the judgment, nor was such demurrer ever withdrawn so far as disclosed by the record. Upon this state of the record it seems to me clear that the defendant was entitled as a matter of law to a final judgment dismissing the complaint. The demurrer was a pleading in the action, it was on file with the clerk of the court, it admitted the allegations constituting this third separate defense, and it had been adjudged by the Court of Appeals that these facts thus alleged and admitted were a sufficient defense to the plaintiff's cause of action upon which was entered the judgment of this court that the facts thus admitted by the pleadings were a good defense to the action. Thus upon the pleadings the defendant was entitled as a matter of right to a final judgment in its favor.

In the Encyclopædia of Pleading & Practice (volume 6, p. 366) it is said:

"If, after a demurrer is overruled, the demurrant fails to ask leave to plead over or answer, and abides by his demurrer, the submission of the case on demurrer is a final submission, and the judgment thereon is final."

In Cutler v. Wright, 22 N. Y. 472, in speaking of a reply to a counterclaim set up in an answer, the rule in respect to which is the same as that relating to new matter set up in the answer as a complete defense to plaintiff's cause of action, the Court of Appeals said:

"When, therefore, new matter was set up in a reply, under section 153 the defendant had two ways to meet it: First, if he deemed it insufficient to avoid the defense interposed by him, he could demur thereto, as authorized by section 155; and, if he wished to controvert the facts so set up, he was not concluded by them on the trial, but the plaintiff would be left to prove them, and the defendant would then be at liberty to countervail them by proof either in direct denial or by way of avoidance. If he elected to admit the facts stated in the reply, and claims that they were insufficient in law to repel the defense interposed by him, the means of doing that were provided by section 155. * * * The defendant in this action elected to rely upon the rights secured to him by section 155, and interposed a demurrer. It is well settled that a demurrer admits the facts pleaded, and merely refers the question of their legal sufficiency to the decision of the court. 1 Chit. Pr. 700. After judgment passed for plaintiff on the demurrer no further issue of the fact remained to be tried as to the matters set up in the pleading demurred to. If there had been no issue of fact raised by the defendant's answer, the plaintiff would have been entitled, under sections 269 and 246, to enter judgment against the defendant as upon his failure to answer. * * * On the trial of these issues of fact the plaintiff was not called upon to prove those matters which the defendant had admitted by his demurrer. By the judgment on it, they stood on the record found in favor of the plaintiff."

It has always been the rule that a demurrer cannot be withdrawn without leave of the court, and that whether such leave should be granted is within the discretion of the trial court. Fisher v. Gould, 81 N. Y. 228; Simson v. Satterlee, 64 N. Y. 657.

Standing upon the record, the facts constituting this defense having been formally admitted by the plaintiff, the defendant was entitled upon the record to judgment in its favor. The learned counsel for the respondent in his brief, quoting from the opinion of the Court of Appeals, says:

"The learned court also observed that this conclusion was reached on a reading of the contract provision and giving to it the favorable inferences which it was required to do in support of the defense; and that, when all the facts were open for consideration, an entirely different view might be taken."

We do not dissent from this view, but the difficulty is that the facts were not open for consideration, as by the demurrer interposed by the plaintiff, which has not been withdrawn and which it has received no leave to withdraw, the facts alleged are conceded and not open for consideration.

Upon the merits, however, I do not think that the evidence justified the finding of the referee that there was a breach of the contract by the defendant. The complaint alleges that after the making of the contract the plaintiff proceeded to carry out and perform the same in accordance with the conditions and agreements therein contained, and has completely carried out and performed the same so far as it has been permitted so to do. It further alleges that on or about the 15th day of December, 1900, there had been earned by the plaintiff under said contract since October 31, 1900, the date of the last work contained in the November estimate, an amount which, according to said contract prices, was largely in excess of $1,000, to wit, a sum amounting in the total to about $30,000; that on or about the said 15th day of December, 1900, the plaintiff duly demanded of the engineer in charge under said contract that he should make the estimate provided therein

as aforesaid as a basis for the monthly payments, and also duly demanded of the defendant that it should pay to the plaintiff 85 per centum of the value of the work so done completely in place on the last day of November, 1900; that, though duly demanded, the engineer refused to make· said estimate, and defendant wrongfully refused to make said payment. The action was, however, commenced on the 8th day of December, seven days before the demand, and a cause of action at law cannot be based upon a demand made upon the engineer on the 15th day of December, where the action to recover upon it was commenced on the 8th day of December.

The complaint also alleges:

"That while the plaintiff was in good faith attempting to carry out and perform the said contract so made by them, as aforesaid, in accordance with the terms thereof, and to build the masonry dam therein provided, the defendant refused to permit the plaintiff to build the said dam so called for in said contract of masonry as aforesaid, but insisted that the plaintiff should construct and build a dam fundamentally different from that contracted for, to wit: A dam partly of earth and partly of masonry. And further in violation of the terms of the contract the defendant caused the engineer, its agent, to give orders and insist upon work being done at times and in violation of the terms of the contract and wrongfully refused to make the estimates or payments therein provided, and without any notice took possession of the work that the plaintiff was performing, and having proceeded, in violation of the plaintiff's right, to carry out and perform the same. That by reason of the said, and other wrongful acts upon the part of the defendant, the defendant has been guilty of a breach of the contract sued upon herein, and thereby the plaintiff has suffered great loss, damage and expense, to wit: not only in the value of the work done and materials and machinery purchased for said work and not paid for, but also in the amount of profits that it would have made if it had been permitted to proceed and carry out the terms and conditions of said contract."

The learned referee found:

"That while the plaintiff was in good faith attempting to carry out and perform the said contract made by them as aforesaid, in accordance with the terms thereof, and to build the masonry dam therein provided, the defendant refused to permit the plaintiff to build the said masonry dam so called for in said contract as aforesaid, but insisted that the plaintiff should construct and build a dam fundamentally different from that contracted for, to wit, a dam of earth and partly of masonry. That the plaintiff continued the work under said contract until the 23d day of November, 1900, when, receiving no answer from the defendant to its communication of November 23, 1900, in which it notified the defendant that it elected to treat the insistence of the defendant in requiring the work to be done under the substituted plan, and its refusal to permit the plaintiff to construct the masonry dam under their contract, as a breach of contract, declined to proceed with the work of constructing an earth dam, and would hold the defendant responsible for damages resulting from the wrongful act unless it received a satisfactory reply, it stopped·work entirely under the said contract and removed its plant from the said work. On November 23, 1900, the plaintiff refused to further perform the contract, stopped all work, and finally and permanently withdrew its plant and left the premises."

And as a conclusion of law the referee found:

"That the refusal of the plaintiff to perform the contract under the original plans, agreement, and specifications, and the insistence of the defendant upon the performance of the contract under the substituted plans being a fundamental and structural change from the original construction, constituted. a breach of the contract on the part of the defendant."

97 N.Y.S.—7

The learned referee thus based the plaintiff's recovery solely upon the breach of the contract by changing the plans for the construction of a dam from a masonry dam to a dam partly of masonry and partly of earth. The contract which was introduced in evidence provided that the contractor (plaintiff) "is to furnish all the material and to do all the work necessary to build a dam across the Hudson river, in the townships of Moreau and Luzerne, in the counties of Saratoga and Warren, state of New York, and at a point about five (5) miles down the river from the dam at Palmer's Falls. The dam is to be in accordance with plans marked Hudson River Water Power Company, dated April 14th, 1900, and signed by Wm. Barclay Parsons and H. De B. Parsons, consulting engineers. The work will also be built in conformity with these specifications. These plans show only the general character of the work, and during the progress of such working plans will be furnished from time to time by the engineer as he may deem necessary." It also provided that the dam should be built of masonry approximate to the line shown. The contract also contained a provision "that the engineer may make alterations in the line, grade, plan, form, position, dimensions, or material of the work herein contemplated, or of any part thereof, either before or after the commencement of construction." It further provided:

"Should it be found desirable by the company to make alterations in the form or character of any of the work, the said company may order such alterations to be made, defining them in writing and drawings, and they shall be made accordingly; provided, that in case such changes increase the cost of the work, the contractor shall be fairly remunerated; and in case they shall diminish the cost of the work, proper deduction from the contract price shal be made; the amount to be paid or deducted to be decided by the engineer."

The contract further provided:

"And it is also understood and agreed that, in case of alterations, so much of this agreement as is not necessarily affected by such alterations shall remain in force upon the parties hereto."

These provisions are to be read in connection with clause B of the contract, which provides:

"To prevent all disputes and litigation it is further agreed by and between the parties of this contract, that the engineer, Wm. Barclay Parsons, or H. De B. Parsons, or their successors either or both of them, shall be referee in all cases to determine all the questions that may in any way arise under this contract, and the amount or the quantity of the work which is to be paid for under this contract, and to decide all questions which may arise relative to the fulfillment of this contract on the part of the contractor, and the findings, estimates and decision of such engineer, or either of them shall be final and conclusive."

The plaintiff then produced a letter from H. De B. Parsons, one of the engineers, which stated that certain blue prints inclosed would "show the alteration in the form and character of the dam you are now building for the Hudson River Water Power Company. This alteration in plan, as you are already aware, was made at the request of the Hudson River Water Power Company. The change contemplates, as you will notice, an earth section within a masonry core wall, across the river portion of the dam; the overfall section remaining as before, from the end of the earth dam to the Warren County Bank." In

answer to this letter, on September 17th the plaintiff wrote to the defendant, acknowledging the receipt of these plans, and saying that it had been informed that the defendant had intended to adopt an earth section for the river portion of the dam, and states:

"In reference to this matter we beg to inform you that we hold you have no authority, under the contract, to make this change without our consent. We are, of course, willing to discuss with you, at any time, this or any other modification of the contract, which you may desire to make, with a view to reaching a mutual understanding, and as a preliminary to entering into an agreement regarding such modification."

In reply the defendant wrote to the plaintiff on September 20th as follows:

"Circumstances have arisen which renders it advisable to change the plans of the dam, and we have changed them accordingly, as we have a perfect right to do under the contract, and your contention that we have no such authority is too ridiculous for serious consideration. Either you have not read the contract, or you do not understand the English language, and we are not willing to even discuss with you so ridiculous a proposition as your letter suggests."

On September 28th the plaintiff, in reply, wrote, notifying the defendant that it did not and should not consent to such substitution without first coming to some mutual agreement in reference thereto, saying:

"We recognize the right which the contract gives you to make alterations, but we insist that these alterations must preserve the main structural features of the original plan. The plan recently submitted by you, for the main dam, contemplates a structure fundamentally different from the one we contracted to build."

On Sepember 30th another letter from the plaintiff to the defendant says:

"We understand from your letter and acts that you insist upon our building the substituted structure, and do not intend to permit us to construct the masonry dam for which we contracted. That there may be no mistake upon our part, we have taken legal advice, as to your right to require us to build the substituted dam under our contract. Our course in this matter will be governed by that advice, which is to the effect that you have no such right. * * * We therefore notify you that we elect to treat your insistence in requiring the work to be done under the substituted plan and refusal to permit us to go on with the work under our contract as a breach of the contract on your part, and shall decline to proceed with the work of constructing an earth dam and shall hold you for damages resulting from your wrongful act, unless we have a satisfactory reply to this communication within five days."

In reply the defendant wrote on the 3d of October:

"Your letter of the 28th was received during my absence. We have stated to you our position in reference to the proposed change of the plans, and we shall stand by that position, and if you have anything further to say on that subject you may address your communications to the referee, since that subject so far as we are concerned is settled."

After this letter communications between the parties continued, the plaintiff continuing to perform its contract. On the 2d of November, 1900, Mr. Moorfield Storey on behalf of the defendant, wrote to the plaintiff as follows:

"Dear Sir: Mr. E. H. Gay has consulted me in regard to your letter addressed to the Hudson River Water Power Company and dated October 30th,

1900, a copy of which was sent to him. I note in the letter your statement that in previous communications you had expressed a willingness to meet him in regard to the matter and your feeling that that suggestion had been arbitrarily declined. It has seemed to me that a conference upon the question would be desirable and that there ought to be some way of avoiding any rupture between the companies. I should be very glad to meet you to that end at such time and place at your convenience as you can name. * * * I should be glad if we reach a conclusion to have the matter definitely settled at our interview, and if there are others whom you wish to consult in the matter I should be glad to have them present.

"Yours very truly,                    Moorfield Storey."

In reply the plaintiff wrote arranging for a conference to be had in the city of New York on Friday, November 9, 1900. This conference was held on November 13, 1900. Mr. Storey wrote the plaintiff as follows:

"Dear Sir: At our conference last Friday I suggested to you that the question whether the portion of the dam under discussion should be built of solid masonry or of earth with a masonry core should be left in abeyance until it was possible to make such a thorough exploration of the river bed as would enable the company to decide what was best. It was my belief that, if the result of the exploration was one thing, my clients might agree to build the dam of masonry; while, if a different result was obtained, your company might agree that the earth dam was the wisest solution, and that it was not worth while for the companies to become involved in litigation until this final exploration should be completed. I suggested to you further that there was certain work which must be done in order to make this examination possible, and that this was work which must be done whichever material was adopted, so neither company would lose anything by having it done. You asked me to put in writing exactly what I wanted and after conference with the engineer of the company I am enabled to do so."

The construction suggested was then specified in detail, and the letter continued:

"When this stage of construction has been reached, the bed of the river of the line selected for the dam would be ready for exploration, and any work desired could then be done on the river section. The work outlines above would practically have to be done whether either design was determined upon. If the masonry dam should be selected, it might be necessary to tear down some of the masonry between lines 46 and 61, so as to permit the new masonry to join on and thoroughly bond with the old, but, if this involves additional expense, it can be paid. It is, of course, understood that, if this work is done, it is without prejudice to the position of either company, so that by doing it your company shall not be supposed to have waived its present position in regard to the change in material of the dam, nor my client to waive the right it now asserts of changing that material. Under this proposition you are asked to do nothing except what the contract clearly calls for, and I cannot help believing that after it is done it will be found that the present difficulty can be avoided."

On the 22d day of November, 1900, in a letter to the chief engineer, the plaintiff said:

"Your letter of the 21st inst., ordering us to proceed with rock excavation between lines 51 and 59, received. Will you kindly mark out for us the outside lines of the excavation and oblige."

On the same day the plaintiff wrote, answering Mr. Storey's letter of the 22d of November, saying:

"The difficulties which we would find in accepting your proposition are many and varied. The work called for by you to be done is not the construction in its entirety common to both the earth and masonry dams. The

order and manner of performance required of us would involve a greater expense to us that the work required under the original contract and in most of the details referred to in your letter.   *   *   *   Upon reflection and after carefully considering the question in all its bearings, we have determined that we must decline your proposition.   There seems to us to be no reason why you should not have been able to determine in advance whether or not you will permit us to build a dam contracted for as we have always been willing and anxious to do.   The insistence upon change of plan and a fundamentally different construction which we are advised is not within the terms of our contract prevents the performance of this contract.   We feel, then, that we must hold to the position taken in our original letter of October 30th, 1900, and as you decline to permit us to carry out our contract to stop the work at once.   We have given orders, therefore, to that effect.   Of course, if it is possible to arrive at any amicable settlement, we would be most pleased to hear from you at an early date."

In answer to the plaintiff's letter of November 22d, Mr. Storey wrote to the plaintiff on November 24th, saying:

"I do not understand that the Hudson River Water Power Company has insisted upon a change of plan or a fundamentally different construction from that which is called for by the contract.   Certain amended plans had been filed and you have objected to go on under them, but my client claims the right under this contract to make the amendment.   My suggestion was and is that the question whether the old plan or the new plan shall be adopted should be postponed until it was possible to make a thorough investigation of the condition in the river, and that meanwhile work should be done clearly called for by the contract while the necessary steps are taken to make the investigation desired.   *   *   *   My client's position is that it has never asked you to build any other dam than the dam contracted for, but you must be aware that the question whether the dam should be built wholly of masonry or partly of earth in the section under consideration has arisen from the discovery of conditions in the river bed which were not known to exist when the contract was signed, and the extent of which has not even yet been thoroughly established.   *   *   *   You should be aware of that, while the Hudson River Water Power Company has asserted the right to modify the plans, it has not yet insisted upon having the modification made.   On the contrary, the question whether it will insist upon the change is still open, and it does not desire to decide this question until it has the fullest light.   I am aware of nothing which should prevent your continuing the work upon the dam, and I should be glad definitely to understand whether you will do so or whether you refuse."

The referee has found that in the meantime and up to the 23d of November, 1900, the plaintiff continued the work under the said contract, when, receiving no answer to its communication of November 23d, 1900, it stopped work entirely under the contract and removed its plant from the work, and further refused to perform the contract, insisting upon treating the proposal of the defendant to modify the character of the dam as a breach of the contract.   The provisions of this contract did not justify the position taken by the plaintiff.   The contract, under the provisions before referred to and others, contemplates a change in both the plans and the method of doing the work described.   It was recognized that work of this magnitude could not be settled in all its details in advance of the conditions that were found to exist.   And thus the necessity for the change of plans was recognized and provided for.   And the provisions giving the engineer authority to determine all questions in dispute emphasized the understanding that disputes between the parties might arise as to the method of doing the work or the plans to be adopted, and that before a modification could be in-

sisted upon it should be referred to a°referee, and that the question as to the right of either party to maintain the position assumed was to be determined by him.

It is claimed by the defendant that there was no necessity for the immediate determination of the question whether this dam should be constructed entirely of masonry or partly of masonry and partly of earth; and, while the defendant insisted with tenacity upon this right to make the change, the correspondence shows that there was no immediate demand upon the plaintiff to proceed with the building of the dam according to the new plans, and the letters of November 13th and 24th, quoted above, proposed to the plaintiff that question as to the plan for this portion of the dam should be reserved until the conditions in relation to the bed of the river, which were essential to a determination as to the proper construction of the dam, could be ascertained.

In Am. & Eng. Enc. of Law (2d Ed.) vol. 7, p. 149, it is said:

"A breach of a contract may arise in any one of three ways, namely, by a renunciation of liability under the contract, by failure to perform the engagement, or by doing something which renders performance impossible."

In 9 Cyc. p. 635, there is a discussion as to what is a renunciation of liability under a contract which the other party can treat as a breach, and the rule is there stated:

"The parties to an executory contract have a right to something more than that it shall be performed when the time arrives. They have a right to the maintenance of the contractual relation up to that time, as well as to the performance of the contract when due, and by the weight of authority, if one of the parties renounces it before that time, the other is entitled to sue at once for the breach."

It is further said (page 636):

"In order that the rule may apply, the renunciation must cover the entire performance to which the contract binds the promisor. * * * The renunciation must also be distinct and unequivocal. A mere expression of intention not to perform is not enough."

It is also said:

"A contractor who has unadvisedly refused to perform his contract may, while the situation of things is unchanged, retract the refusal and go on with the contract, and is not cut off from so doing by the service upon him of a notice to the effect that the contractor will hold such refusal to be a default, and will sue to dissolve the contract."

A renunciation or repudiation of a contract by one party, to justify the other in treating it as a breach, must, therefore, be a clear and distinct repudiation of obligations under it.

Such was the case presented in McMaster v. State of New York, 108 N. Y. 542, 15 N. E. 417, relied upon by the plaintiff. The facts upon which the contractor was justified in basing his action upon a breach by the state in that case are so essentially different from any facts proved here that the case is not an authority for the finding of the referee that there was a breach of contract in this case by the defendant. There was no unequivocal demand upon this plaintiff to proceed forthwith to construct the dam in accordance with the modified plans, as the time for the final determination as to the plans for that portion

of the work had not arrived.  A review of the correspondence between the parties I think clearly shows that there had been no final and irrevocable act of the defendant which could be treated as as refusal to perform this contract on its part.  What the defendant had insisted upon was that it had a right under the contract to make a proposed change in the plans.  That right had been strenuously denied by the plaintiff.  Just such a condition was contemplated by the contract in clause B, which expressly provided:

"To prevent all disputes and litigation, it is further agreed by and between the parties to this contract, that the engineer, Wm. Barclay Parsons or H. De B. Parsons, or their successors either or both of them, shall be referee in all cases to determine all the questions that may in any way arise under this contract.  *  *  *  and to decide all questions which may arise relative to the fulfillment of this contract on the part of the contractor, and the findings, estimates and decisions of such engineer or either of them shall be final and conclusive."

There had been no offer to submit this question to the engineer as referee.  The engineer had not formally decided that change of plans proposed by the defendant was allowed by the contract, and whatever was the position which the company had taken in October, for some time prior to the refusal of the plaintiff to continue the work there had been no claim by the defendant which justified the plaintiff in saying that the defendant had finally and definitely determined that the dam should be constructed according to the changed plans, and that it would not accept a construction according to the original plans.

In determining whether the acts of the defendant were such as to justify the plaintiff in treating them as a total breach of the contract the nature of the work to be done and the engineering problems presented, with the extent of the knowledge of the actual existing conditions, should be considered.  There seems to be no dispute but that the actual existing condition of the bed of the river across which this dam was to be constructed had not been, at the time of this alleged breach, definitely determined; and considering the magnitude of the work it was certainly not unreasonable for the defendant to request a delay until such condition could be ascertained, and it was this that the defendant again and again requested, which request the plaintiff refused, insisting upon its right to an immediate answer as to whether or not the defendant intended to insist upon the change in plans.  I do not think, therefore, that there was any position taken by the defendant which justified the plaintiff in abandoning the contract and in refusing to continue it upon the ground that there had been a breach thereof by the defendant.

There are other questions presented which, in view of the conclusion to which I have arrived, it is not necessary to consider.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.  All concur; O'BRIEN, P. J., and CLARKE, J., on the second ground stated.