L. HELLER & SON, INC., Respondent, *v.* THE LASSNER COMPANY, Appellant.

L. HELLER & SON, INC., Respondent, *v.* ARTHUR R. BECKER, Appellant.

L. HELLER & SON, INC., Respondent, *v.* PAUL E. LEVI and Another, Copartners, Trading under the Firm Name and Style of LEVI & WEISBURGER, Appellants.

First Department, October 30, 1925.

Patents — action to rescind license agreement and for accounting — plaintiff granted defendants non-exclusive license to import and sell synthetic sapphires on royalty — defendants estopped to deny validity of patent — duress not shown by allegation that defendants were compelled to make agreement to prevent civil action against them — defendants estopped to claim mutual mistake of fact as to validity of patent in absence of repudiation of license agreement — repudiation of license agreement not shown by request for cancellation — allegation that no synthetic sapphires were made according to specifications of patents states matter provable under denials.

In an action to rescind a patent license agreement and for an accounting in which it is alleged that the plaintiff granted defendants a non-exclusive license to import and sell synthetic sapphires on a royalty basis, the defendants are estopped to deny the validity of the patent so long as the license agreement is in existence, and a defense based on the invalidity of the patent is insufficient.

The defense of duress based on an allegation that the defendants were compelled to make the license agreement in question in order to prevent the plaintiff from instituting a civil action against them is insufficient, since duress does not arise under those circumstances.

A defense based on alleged mutual mistake of facts as to the validity of patents is insufficient in the absence of a repudiation of the license agreement, and since the license agreement was in effect and had not been repudiated at the time this action was brought, that defense is insufficient.

Repudiation of a license agreement is not shown by an allegation that the defendants requested the cancellation thereof.

An allegation that no synthetic sapphires were made according to the specifications of the patents granted to the plaintiff states matter provable under denials and does not constitute a defense.

APPEAL in each of the above-entitled actions by the respective defendants, The Lassner Company, Arthur R. Becker, and Paul E. Levi and another, from orders of the Supreme Court in each action, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 28th day of November, 1924, granting in each action plaintiff's motion to strike out the defenses contained in the defendants' amended answers and dismissing the counterclaims therein.

*Caldwell & Polhemus* [*George E. Polhemus* of counsel], for the appellants.

*Hays, St. John & Buckley* [*John Schulman* of counsel], for the respondent.

BURR, J.:

The complaint in each case alleges: L. Heller & Son, Inc., the plaintiff, is the owner of certain United States letters patent covering an article known as " synthetic sapphire." Prior to 1922 an action was brought in the United States District Court against an infringer of these letters patent, which resulted in a decree sustaining the validity of the patent. Shortly thereafter an agreement was made between the parties wherein and whereby the plaintiff granted to the defendant a non-exclusive license to import, use and sell synthetic sapphires upon the payment to plaintiff of a specified royalty. Pursuant to the agreement regular reports were to be submitted, showing the number and kind of synthetic sapphires imported, used and sold, information as to the purchase price and import duties and other similar data. Various other conditions were contained in the agreement, some being to the effect that the defendant was not to be interested, directly or indirectly, in the importation, use or sale of synthetic sapphires other than those covered by the agreement, and that he was to give the plaintiff notice of any infringement which might come to his attention. Among other things, the defendant admitted in the same agreement the novelty, validity and utility of the patent. The defendant thereafter imported, used and sold synthetic sapphires, submitted reports purporting to give the entire information to the plaintiff; but it is alleged that these reports were false and untrue and that the plaintiff relied on these reports in accepting the payments of royalties; that the defendant breached the agreement in other particulars, such as aiding and abetting unlicensed persons to infringe upon plaintiff's patent rights, failing and refusing to give any information about these infringements to the plaintiff, refusing to deliver statements under oath, and purchasing, selling and using synthetic sapphires other than those which were reported to have been purchased as provided for in the agreement.

The relief prayed for is that the contract be rescinded by the court, that the accounts and reports be set aside, that defendant be required to account and that an injunction issue.

The defendant in each case, in addition to certain denials, has interposed four defenses: (1) A defense to the effect that the patent obtained by the plaintiff was obtained by false statements to the

Patent Office and that the adjudication in the Federal court was had as a result of false testimony. (2) That the defendant was obliged to enter into the agreements with the plaintiff as the result of a threat on the part of the plaintiff to bring actions against him for infringement. (3) That there was a mutual mistake of fact as to the validity of the patent, and, therefore, the agreement is not binding. (4) That no sapphires were being imported which complied with the specifications of the plaintiff's patent, and, therefore, the contract had nothing upon which to operate.

The court below granted the plaintiff's motion without opinion.

What is designated as the second separate defense and counterclaim is an attempt to avoid the license agreement for an alleged fraud in the procurement of the patent and for alleged misrepresentations regarding the validity of the patent at the time of the making of the agreement.

The defense alleges that the plaintiff and Verneuil, the inventor, in the application for the patent, falsely stated that the latter was the original inventor; that the plaintiff in the action in the Federal court, wherein the patent was adjudged valid, made the same misstatements and repeated said misstatements to defendant at the time the agreement was entered into; that the patent, the decree of the United States District Court and the opinion of the judge were exhibited to the defendant at the time of the making of the agreement; and further alleges that Verneuil to the knowledge of plaintiff was not the original inventor; that all of the said statements as to Verneuil's invention were false and untrue and known by the plaintiff to be false and untrue, as a result of which defendant was deceived and defrauded; and, therefore, defendant asks for the return of the royalties already paid plaintiff under the said agreement.

There is no allegation in this defense that the defendant repudiated the agreement and notified the plaintiff to that effect and of their intention to continue to use the process in hostility to the patent.

The rule appears to be well established that a licensee under a patent, so long as he has the protection of the license agreement, cannot attack the validity of the patent. This rule is based upon the principle of estoppel and is effective even in the absence of a contract provision to that effect. (See *Farnsworth* v. *Boro Oil & Gas Co.*, 216 N. Y. 40, 46, where the court said: " It [defendant's position] is the same as that of a licensee who has acquired the right to manufacture under an outstanding, though defective, patent. The lessee will not be heard to say that the lessor had no title to convey [*Tilyou* v. *Reynolds*, 108 N. Y. 558; *Stott* v. *Ruther-*

*ford,* 92 U. S. 107, 109], and this though the lease was not merely voidable, but void upon its face. The licensee will not be heard to say that the patent is a nullity.")

Before a licensee is entitled to attack the validity of a patent, the benefits of which he has accepted, he must clearly and unequivocally give notice to the licensor that he repudiates the agreement and does not intend to act thereunder or accept its benefits, so that he may be proceeded against as an infringer.

In *Saltus* v. *Belford Co.* (133 N. Y. 499) the court said (at p. 503): " A licensee under a patent cannot assail it as void while manufacturing under its protection. He cannot set it at defiance until his license has been surrendered or withdrawn, and his act can be treated as an infringement."

In *Martin* v. *New Trinidad Lake Asphalt Co., Ltd., No. 3* (182 App. Div. 719), the defendant wrote a letter containing the following: " Such use of this process is a violation of our rights under the contract entered into between yourself and the Trinidad Asphalt Company dated September 5th, 1894, and removes all consideration for royalties specified therein." It was claimed that this constituted a repudiation of the license. Mr. Justice PAGE said (at p. 722): " This is far from being a repudiation of the contract. Such a repudiation must be made by a clear, definite and unequivocal notice that they abandon the position of licensee and announce their intention to continue to use the process in hostility to the patent and in defiance of its authority, so that the licensor could proceed against them as infringers." And again (at p. 723): " The seventh defense is predicated upon the alleged invalidity of the patent, but a licensor [licensee] cannot as a defense to the payment of royalties attack the validity of the patent any more than a tenant can defend an action for rent on the ground that the landlord's title is defective."

The third defense purports to set up a defense of duress upon the theory that the threat of plaintiff to institute suit for royalties and for an injunction for infringement constituted duress and coercion which vitiated the contract. A threat or statement of intention to institute a civil suit does not constitute duress. In *McGuire & Co.* v. *Vogel Co.* (164 App. Div. 173) the court said (at p. 175): " It has always been the settled law of this State that a mere threat to sue does not avoid a promise to pay; " and (at p. 176): " It seems to me, however, clear that a mere threat to institute legal proceedings to recover a claim is not duress upon which can be based an action to recover a sum of money thereafter voluntarily paid, and, therefore, the complaint states no cause of action. * * * Both plaintiff and defendant were corporations

and apparently free agents, and there is nothing to show that one was in any position to dominate or oppress the other. In such circumstances I can find no authority for holding that the mere threat of one to take the property of another ' by force ' constitutes duress."

In *Lilienthal* v. *Bechtel Brewing Co.* (118 App. Div. 205, 207) the court said: " What it is said they threatened to do was no more than to pursue a legal remedy to which they were entitled, and this does not constitute duress."

In *Stayton Realty Corp.* v. *Rhodes* (200 App. Div. 108) this court, by Mr. Justice SMITH, quoting from the opinion of Judge McLAUGHLIN in *Levy Leasing Co., Inc.,* v. *Siegel* (230 N. Y. 636), said (at p. 110): " ' It never constitutes duress for a person to threaten to enforce his legal rights by lawful means. (*McPherson* v. *Cox,* 86 N. Y. 472; *Dunham* v. *Griswold,* 100 N. Y. 224.) If he had been coerced into signing the renewal, he could rescind for that reason, but in order to do so he had to surrender possession of the property. This is the general rule. A party cannot rescind while retaining the fruits of the contract. In case of real estate he must surrender possession before he can maintain an action for rescission of the instrument under which he obtained possession. (*Schiffer* v. *Dietz,* 83 N. Y. 300; *Tompkins* v. *Hyatt,* 28 N. Y. 347, 353; *Oregon Pacific R. R. Co.* v. *Forrest,* 128 N. Y. 83.)' "

In the case at bar the defendants affirmed the contract, accepted the benefits of the license, imported, used and sold the sapphires and made payments of royalties to the plaintiff.

Defendant in the fourth separate defense and by way of counterclaim, alleges that there was a mutual mistake of fact as to the actual condition existing at the time the patent was filed and at the time it was sustained by the United States courts.

What was said above in regard to the second defense setting up the defense of fraud and misrepresentation in the procurement of the patent and the execution of the agreement, applies here.

So long as the license agreement remains unrepudiated by clear and unequivocal action, and so long as the defendant failed to put itself clearly and unequivocally in the position of an infringer without the protection of a license agreement, it cannot refuse to pay the royalties.

It was said by the court in *Marston* v. *Swett* (82 N. Y. 526, 534): " In the case last cited [*Lawes* v. *Purser,* 26 L. J. Q. B. 25; 38 Eng. Law & Equity, 48], ERLE, J., states the rule thus: ' If the plaintiff believed the patent to be valid and the defendants believed so, too, it seems to me that the defendants must pay for the privilege until

they can show that the patent has been rescinded or revoked, or that notice has been given to plaintiff that the defendants will not pay any more under the contract.' This is a compact statement of the law and meets our approval."

Later cases have held that a licensee must do more than refuse to pay. He must give clear and unequivocal notice that he repudiates the agreement and stands in the position of an infringer upon the patent. (See *Martin* v. *New Trinidad Lake Asphalt Co., Ltd., No. 3*, 182 App. Div. 719.)

In *Skinner* v. *W. M. & R. M. Co.* (140 N. Y. 217, 222) the court said with reference to an alleged termination as a result of a refusal to pay: " Several facts about these notices challenge our attention. They are a refusal to pay, and give as a principal reason the asserted invalidity of the patent. But they do not in terms renounce its protection; they do not directly or explicitly abandon the position of licensees; they do not assert an intention to continue the manufacture in hostility to the patent and in defiance of its authority. All that can be said is that something of that sort might fairly be inferred from the refusal to pay, coupled with a claim of invalidity. While that is a possible it is not a necessary inference, and the licensor was entitled to a distinct and definite and unequivocal notice, such as would lead the company inevitably liable as an infringer if the patent should be sustained. It is quite doubtful whether the defendant intended to take any such position or the plaintiff at all so understood it."

In this defense there is an allegation that the defendant asked to have the contract canceled. This is not an allegation of repudiation of the contract as required under the cases. Even though there may have been an offer to cancel, unless this offer was accepted and there was a mutual cancellation, or unless the defendant's repudiation was clear and unequivocal, the agreement is still binding and the defendant is still in the position of a licensee.

As was said by the court in *National Contracting Co.* v. *Hudson River W. P. Co.* (110 App. Div. 133, 147): " A renunciation or repudiation of a contract by one party, to justify the other in treating it as a breach, must, therefore, be a clear and distinct repudiation of obligations under it."

A mere attempt to negotiate or to make demands or offers is not a repudiation. (See *Gravenhorst* v. *Zimmerman*, 236 N. Y. 22.) In *Skinner* v. *W. M. & R. M. Co.* (*supra*) the court said: " A licensor is entitled to assume that his licensee remains such until the latter, by a clear, definite and unequivocal notice emanating from lawful and competent authority, throws off the protection of the license and stands admittedly an infringer if the patent is

valid. The licensor is not to be left in a doubtful or uncertain position. He must not be exposed to the double danger of being defeated in a suit for infringement by a plea of license never effectually or authoritatively renounced; or if he sues for royalties, of being beaten because there was merely an infringement, if anything."

The fifth defense alleges that no synthetic sapphires were made according to the specifications of the patent, and that, therefore, the contract was impossible to perform.

Plaintiff demands royalties for the importation of "synthetic sapphires" of the nature described in the contract. If defendant has not imported synthetic sapphires of that nature it can show that fact under the denials.

The facts set forth in the fifth defense are purely matters controverting the allegations of the complaint and the issues thereon should be raised properly only by a denial.

For the reasons above stated I am of the opinion that the defenses contained in the answer in each case are insufficient in law and the counterclaims therein do not state facts sufficient to constitute a cause of action, and were properly stricken out by the court below, and the orders appealed from should, therefore, be affirmed, with ten dollars costs and disbursements, with leave to the defendants to serve amended answers within twenty days from service of the order to be entered hereon with notice of entry thereof upon payment of said costs.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Orders affirmed, with ten dollars costs and disbursements, with leave to defendants to serve amended answers within twenty days from service of order upon payment of said costs and ten dollars costs of motion at Special Term.