**AIR KING PRODUCTS CO., Inc. v. HAZELTINE RESEARCH, Inc.**

Civ. A. No. 10339.

United States District Court
E. D. New York.

Nov. 16, 1950.

of patent rights, and of the nonenforceability of asserted contract rights; and the defendant, pursuant to the provisions of Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., has moved for partial summary judgment in its favor upon issues separately to be tried under the order of the court entered on or about August 14, 1950. See the court's opinion reported in D.C., 10 F.R.D. 381.

The following relief is sought:

1) That the license agreement between the parties be declared valid and in full force and effect, and enforceable by Hazeltine, as prayed for in the counterclaim.

2) That Air King, as licensee under the license agreement, be declared estopped from contesting the validity of the licensed patents.

3) That under the license agreement the plaintiff be required to account for and pay royalty at the rates specified in Article IV, sec. 1, upon all radio and television receiving sets and apparatus as described in Article III, sec. 2, sold by Air King during the license term, and that alleged issues of patent infringement or coverage are immaterial and not subject to adjudication in this action.

4) That Air King has breached the agreement and has failed to render reports regarding its sales for all purchases subsequent to May 31, 1949; has failed to pay defendant royalties upon any of its sales subsequent to April 1948, except a payment for the month of May 1948, and that upon plaintiff's report to the defendant for the period ending May 31, 1949, Air King's indebtedness to Hazeltine for unpaid royalties amounted to $33,939.19 for that period.

It is urged that partial summary judgment under Rule 56 is appropriate because no genuine issue of fact is believed to exist on any material point.

It is to be observed that the license agreement between the parties is similar in all essential terms to that which has been before the courts in other actions, and in which the validity of the license agreement has been sustained, Automatic Radio Manufacturing Co., Inc., Petitioner, v.

Darby & Darby, New York City, Floyd H. Crews, Morris Relson, New York City, of counsel, for plaintiff.

Watson, Bristol, Johnson & Leavenworth, New York City, David A. Woodcock, New York City, Laurence B. Dodds, Little Neck, N. Y., of counsel, for defendant.

GALSTON, District Judge.

The action is brought pursuant to Title 28 U.S.C.A. § 2201, for a declaratory judgment of invalidity and non-infringement

Hazeltine Research, Inc., 339 U.S. 827, 70 S.Ct. 894, affirming 1 Cir., 176 F.2d 799, and more recently Hazeltine Research, Inc., v. Admiral Corp., 7 Cir., 183 F.2d 953. What was said in the Supreme Court opinion is applicable here.

"This is a suit by respondent Hazeltine Research, Inc., as assignee of the licensor's interest in a nonexclusive patent license agreement covering a group of 570 patents and 200 applications, against petitioner Automatic Radio Manufacturing Company, Inc., the licensee, to recover royalties. The patents and applications are related to the manufacture of radio broadcasting apparatus. Respondent and its corporate affiliate and predecessor have for some twenty years been engaged in research, development, engineering design and testing and consulting services in the radio field. Respondent derives income from the licensing of its patents, its policy being to license any and all responsible manufacturers of radio apparatus at a royalty rate which for many years has been approximately one percent. Petitioner manufactures radio apparatus, particularly radio broadcasting receivers.

"The license agreement in issue, which appears to be a standard Hazeltine license, was entered into by the parties in September 1942, for a term of ten years. By its terms petitioner acquired permission to use, in the manufacture of its 'home' products, any or all of the patents which respondent held or to which it might acquire rights. Petitioner was not, however, obligated to use respondent's patents in the manufacture of its products. For this license, petitioner agreed to pay respondent's assignor royalties based upon a small percentage of petitioner's selling price of complete radio broadcasting receivers, and in any event a minimum of $10,000 per year. It further agreed to keep a record of its sales and to make monthly reports thereof." Automatic Radio Mfg. Co., Inc., v. Hazeltine Research, Inc., 339 U.S. 827, 829, 70 S.Ct. 894, 895.

The agreement between the parties is dated as of July 1, 1941 and binds the parties for a ten year period.

The defenses of Air King to Hazeltine's counterclaim are essentially similar to those which were held insufficient in law not only in Automatic Radio Mfg. Co., Inc., v. Hazeltine Research, Inc., supra, and Hazeltine Research, Inc., v. Admiral Corp., supra, but also in Hazeltine Research v. DeWald Radio Mfg. Co., 276 App.Div. 1001, 95 N.Y.S.2d 772.

The defense to the counterclaim that the license agreement must fall because of misuse of patents by Hazeltine was unsuccessfully urged in the actions cited. Still Air King charges that Hazeltine amassed a vast number of patents in the field of radio and television, not for use, but for the purpose of collecting royalties on patent-free industry products; that the agreement sought to be enforced by Hazeltine requires the payment of royalties on the entire gross production of home television and radio sets made or sold by the plaintiff without regard to whether the defendant owns or controls any patent covering such sets, and even if Hazeltine has or controls no patents whatever covering such sets.

In Automatic Radio Mfg. Co., Inc., v. Hazeltine Research, Inc., supra, the Supreme Court rejected the same defense, saying: "The mere accumulation of patents, no matter how many, is not in and of itself illegal. See Transparent-Wrap Machine Corp. v. Stokes & Smith Co., 329 U.S. 637, 67 S.Ct. 610, 91 L.Ed. 563. And this record simply does not support incendiary, yet vague, charges that respondent uses its accumulation of patents 'for the exaction of tribute' and collects royalties 'by means of the overpowering threat of disastrous litigation.' We cannot say that payment of royalties according to an agreed percentage of the licensee's sales is unreasonable. Sound business judgment could indicate that such payment represents the most convenient method of fixing the business value of the privileges granted by the licensing agreement. * * * We hold that in licensing the use of patents to one engaged in a related enterprise, it is not per se a misuse of patents to meas-

ure the consideration by a percentage of the licensee's sales." Automatic case, 339 U.S. 827, 834, 70 S.Ct. 894, 898.

Also on the subject of misuse, Air King in its complaint alleges that the license is invalid because it requires the licensee to apply to radio and television sets made by it a notice purporting to restrict the uses to which the sets may be put by purchasers from Air King.

However, there was a waiver of that restriction. In a letter sent to Air King, dated September 18, 1945, Hazeltine wrote that if the licensee did not desire to use that form of notice, the apparatus sold could be marked as follows: "This apparatus is licensed under the United States patent rights of Hazeltine Corporation."

■ So the issue sought to be raised in the complaint concerning the form of notice really became moot. The Supreme Court in Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., supra, had this to say about the notice: "It is further averred that this form of notice is all that respondent has required of its licensees since September 1945. Since this provision of the agreement was made for the benefit of respondent, it could voluntarily waive the provision. Westinghouse Electric Corp. v. Bulldog Electric Products Co., 4 Cir., 179 F.2d 139, 145, 146. Thus the question of the legality of the original restrictive notice provision is not before us. Cf. Standard Oil Co. (Indiana) v. United States, 283 U.S. 163, 181-182, 51 S.Ct. 421, 427, 428, 75 L.Ed. 926."

Still on the issue of misuse, in paragraph 22(e) of the complaint the charge is made that Hazeltine refused to grant licenses under some of its patents without requiring the licensee to take a license under all its patents. The Binns affidavit expressly denies, in the instant case as in the Automatic Radio case and in the Admiral case, that defendant has refused licenses under fewer than all its patents.

There remains finally for consideration, in respect to Air King's charge of misuse of patents by Hazeltine, the requirement in the license agreement for the payment of royalty on "parts on which royalty has already been paid by other licensees". This allegation is denied in the answer and also in the affidavit of Binns. In any event it is hard to see how such a condition, even if based on fact, would constitute a misuse of Hazeltine patents.

The defendant convincingly responds that even if the plaintiff, Air King, inserted in its receiving sets parts which it bought from the Radio Corporation of America, and also assuming that such parts were licensed to it by the Radio Corporation of America, the assembled Air King sets clearly constituted a new unit which fell within the measure of the royalty payment required by the license.

Thus the defense of misuse as presented in this action and in opposition to this motion presents no new facts which can possibly evade the rejection of such defense in the Automatic and Admiral actions, supra.

The license agreement, which pursuant to Article XII is to be construed under the laws of New York, is attacked on the contention that it may not be enforced against Air King because of section 218 of the General Corporation Law of New York, McK. Consol. Laws, c. 23. That section reads: "§ 218. Contracts of unauthorized corporation not enforceable. A foreign corporation, other than a moneyed corporation, doing business in this state shall not maintain any action in this state upon any contract made by it in this state, unless before the making of such contract it shall have obtained a certificate of authority. This prohibition shall also apply to any successor in title of such foreign corporation and to any person claiming under such successor of such foreign corporation or under either of them."

■ Hazeltine concedes, for the purposes of this motion, that when the license agreement was made its predecessor in interest was a foreign corporation and had not filed a certificate of authority, as required by the statute. Nevertheless, since the complaint in this action bases jurisdiction upon a federal question, i. e. the validity and the infringement of patents, the defendant cannot be barred from

asserting its defense and the counterclaim related thereto. In consequence jurisdiction for the determination of the counterclaim is not restricted to a showing of diversity of citizenship. The New York law, therefore, in respect to the status of the defendant in asserting its counterclaim, does not control. The Erie doctrine, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is not applicable for that reason. See Guaranty Trust Co. of New York v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079, where it is stated: "In essence, the intent of that decision (Erie Railroad Co. v. Tompkins) was to ensure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same * * *, as it would be if tried in a State court."

See also E. I. Dupont De Nemours & Co. v. Byrnes, 2 Cir., 101 F.2d 14; and Lionel Corporation v. De Filippis, D.C., 11 F.Supp. 712, 716. In Angel v. Bullington, 330 U.S. 183, at page 192, 67 S.Ct. 657, at page 662, 91 L.Ed. 832, it was said: "* * * where resort is had to a federal court not on grounds of diversity of citizenship but because a federal right is claimed, limitations upon the courts of a State do not control a federal court sitting in the State."

The counterclaim in the pending case arose out of the same transaction or occurrence which is the subject matter of the opposition party's claim, and consequently Rule 13(a) of the Federal Rules of Civil Procedure applies. In Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, it was held where the court has jurisdiction of the complaint, and the defendant's counterclaim is of a compulsory nature, that was sufficient to give the district court jurisdiction.

Assuming, however, for purposes of the argument, that New York law applies, a controlling case seems to be Mahar v. Harrington Park Villa Sites, 204 N.Y. 231, 97

N.E. 587, 588, 38 L.R.A.,N.S., 210. The Appellate Division, 146 App.Div. 756, 131 N.Y.S. 514, had upheld a complaint which charged that the contract between the parties was void because made by a foreign stock corporation doing business in the State of New York in violation of section 15 of the General Corporation Law. However, the Court of Appeals took a different view and said that the prohibition of the statute would prevent the appellant from suing the respondent upon the contract alleged in the complaint, but that the contract was not wholly invalid. The court's opinion reads:

"I think that the penalty imposed upon a foreign stock corporation for doing business in New York without the certificate of authority required by section 15 of the General Corporation Law, is limited to that thus prescribed in the section itself.* No doubt the Legislature could have gone further and declared all contracts to be void which were made by a foreign stock corporation doing business in this state without having obtained the certificate; but it has not done so. This was the view taken in Alsing Co. v. New England Quartz & Spar Co., 66 App.Div. 473, 73 N.Y.S. 347, affirmed 174 N.Y. 536, 66 N.E. 1110, where it was held that section 15 did not prevent a foreign stock corporation doing business here without having procured the necessary certificate from recovering upon a counterclaim growing out of the transaction upon which the plaintiff sued. 'The defendant, having been brought into court and thus made to defend,' said Mr. Justice O'Brien in that case, 'should be allowed, unless there is a distinct provision to the contrary, not only to defend, but also to litigate any question arising out of the transaction that has been made the basis of the plaintiff's complaint. * * *'" See also John E. Rosasco Creameries v. Cohen, 276 N.Y. 274, 11 N.E.2d 908, 118 A.L.R. 641.

So even the New York law is against the plaintiff's contention that section 218 of the General Corporation Law of New York is a bar to this action.

* Now section 218 of the General Corporation Law.

Another contention of the plaintiff in opposing this motion is that the license agreement is unenforceable because of Hazeltine's material breach.

Article VIII, section 1, of the license agreement, provides: "Licensor agrees that it will bring and diligently prosecute such suits for infringement of the various patents under which licenses are herein granted as may in its judgment be reasonably necessary and prudent for enforcing those patents and preventing unlicensed competition in patented apparatus in the field of this license."

It is asserted that thus Hazeltine undertook to preserve Air King's competitive position, citing General Finance Corporation v. Dillon, 10 Cir., 172 F.2d 924, 925; Guardino Tank Processing Corporation v. Olsson, Sup., 89 N.Y.S.2d 691. For the factual situation Air King relies on the affidavit of Crews. Mr. Crews says that non-licensees engaged in the industry have a production of from sixty percent. to seventy percent. of the dollar value of the industry, and are thus important competitors of Air King. Of these, six of the largest companies are included—Admiral, Motorola, Emerson, Philco, General Electric and Dumont. According to Crews, between June 1925 and August 1939 Hazeltine instituted one hundred and sixty-two suits for patent infringement, but most of them were against dealers.

It is argued that Hazeltine, despite the number of infringement suits instituted, has avoided litigation and enforcement of its patents; and it is charged that Hazeltine was doing so at the time it entered into the license with Air King. Moreover Air King complains that after two important radio companies, Crosley and Emerson, had filed declaratory judgment suits against Hazeltine in December 1945, Hazeltine organized a new, wholly owned subsidiary, Hazeltine Research, Inc., the defendant here, and transferred all of its patents to the defendant. It is argued that this transfer was made in order to enable the defendant, in those declaratory judgment suits, to dismiss the suits on the ground that title to the patents was not before the court. The conclusion is sought to be drawn that if Hazeltine had had any valuable patents, and if it in good faith had sought to prevent unlicensed competition, it would have sued important leaders in the industry. Hazeltine's short answer is that the determination of when and in how many cases it should bring suits against alleged infringers under the license agreement is left to its own judgment. In the Binns affidavit there is a list of a large number of such actions which were instituted by Hazeltine as evidence of its good faith and its desire to prosecute infringers. In this affidavit it appears that since July 1, 1941, (the date of the license agreement herein) Hazeltine and its predecessor Hazeltine Corporation, performed all of the obligations under the agreement, and that since October 1, 1947 it has prosecuted to final decree, and is still prosecuting, infringement litigation involving patents listed in the license agreement against Crosley Corporation, General Motors, Admiral Corporation, General Electric Company and Philco Distributors. It also appears that Air King had never made any complaint to Hazeltine, or its predecessor Hazeltine Corporation with respect to any of the matters now urged against the validity and enforceability of the license agreement or of defendant's obligation to pay royalties, prior to the institution of this action on or about October 20, 1949. Its letter of repudiation to Hazeltine is dated October 18, 1949, but was not received in Chicago by Hazeltine until October 24, 1949. It is significant too that in this letter of repudiation there is nothing said about failure to prosecute competitors.

This alleged breach of the license agreement was considered in Hazeltine Research, Inc., v. Automatic Radio Mfg. Co., D.C., 77 F.Supp. 493, 498, and that court said: "Article VIII only requires plaintiff to prosecute infringers as 'may *in its judgment* be reasonably necessary and prudent * * *.' (Emphasis mine.) This relieves the court of substituting its judgment for that of the plaintiff. However, the facts indicate that plaintiff has acted diligently in this respect."

In the opinion of the Court of Appeals for the First Circuit in that case, 176 F.2d 799, the question is not discussed, and apparently was not raised, and if raised was not deemed a defense. So too, when the case reached the Supreme Court, 339 U.S. 827, 70 S.Ct. 894, there is nothing in its decision bearing upon this contention.

 It must be concluded that there was no breach of Article VIII of the license agreement.

The fourth point raised by Air King, in opposition to this motion, is that because Air King repudiated its license on October 18, 1949, the license may no longer be enforced against it. Air King argues that the laws of the State of New York which govern the license agreement permit such a repudiation of a license, and that following any repudiation the obligation to pay royalties ceases.

The license agreement is a bi-lateral contract. It was made in 1941 for a term of ten years. It contains no provision permitting the licensor to terminate prior to the expiration of the license period. Hazeltine, on October 28, 1949, in response to the letter of repudiation, refused to agree to the termination, and insisted upon plaintiff's performance under the contract. The ineffectiveness of repudiation under the terms of this license was considered in the Automatic Radio v. Hazeltine [339 U.S. 827, 70 S.Ct. 899] case. The Supreme Court said: "The general rule is that the licensee under a patent license agreement may not challenge the validity of the licensed patent in a suit for royalties due under the contract. United States v. Harvey Steel Co., 196 U.S. 310, 25 S.Ct. 240, 49 L. Ed. 492."

It is true that there is no recital, in the Supreme Court decision of the asserted right to repudiate a license agreement on the particular grounds stated in the letter of repudiation in this case; but in the opinion of the Court of Appeals of the First Circuit in Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 176 F.2d 799, 809-810, the point was considered and rejected. The opinion recites:

"In addition to that, so far as it may be a question of federal law, in the absence of a cancellation option in the agreement, or of a substantial default by the licensor, the licensee cannot by any such unilateral notice of repudiation terminate its contract obligation under a license agreement having several years yet to run. St. Paul Plow Works v. Starling, 1891, 140 U.S. 184, 11 S.Ct. 803, 35 L.Ed. 404; Ohio Citizens Trust Co. v. Air-Way Elec. Appliance Corp., D.C.N.D.Ohio, 1944, 56 F.Supp. 1010. But cf. Martin v. New Trinidad Lake Asphalt Co., D.C.N.J., 1919, 255 F. 93, 94. Assuming that local law governs the matter, we are satisfied that, even if repudiation by the licensee is, in some circumstances, a defense in New York to a suit for royalties, Automatic's letter of September 18, 1947, does not meet the stringent requirements set forth in Skinner v. Walter A. Wood Mowing and Reaping Machine Co., 1893, 140 N.Y. 217, 35 N.E. 491, 37 Am.St.Rep. 540.

"The cases which have suggested the existence of some such doctrine of unilateral repudiation have explained that the licensee many announce unequivocally 'that he no longer recognizes the binding force of the agreement, and that he will thereafter manufacture or use the article covered by the patent under a claim of right, founded upon the alleged invalidity of the patent, and in hostility to and defiance of the authority of the patent and the license, so that the licensor can thereafter proceed against him for an infringement of the patent, if he choose so to do.' Martin v. New Trinidad Lake Asphalt Co., supra, D.C.N.J., 1919, 255 F. at page 94. See Skidmore v. Fahys Watch-Case Co., 1898, 28 App.Div. 94, 101, 50 N.Y.S. 1016, 1021-1022; L. Heller & Son, Inc., v. Lassner Co., 1925, 214 App. Div. 315, 318, 212 N.Y.S. 175, 180. But as we have already pointed out, under the license agreement in suit Automatic's liability for royalties does not depend upon its actual use of any of the licensed patents in the particular apparatus made and sold by it. If Automatic were permitted to repudiate the license agreement and in fact did not utilize any of the inventions covered by Hazeltine's patents, Hazeltine

could not prevail in an infringement suit even if all its patents were valid; and Automatic would thus achieve immunity from liability by non-use of Hazeltine's patents, despite its contract undertaking to pay royalties, regardless of such use, for the right to make use of them. Hence, even assuming that a doctrine of unilateral repudiation might in some cases be recognized, such a defense certainly would not be available under the circumstances of the case at bar." Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 1 Cir., 176 F.2d 799, 809-810.

The reasons advanced by the Court of Appeals of the First Circuit in Automatic Radio v. Hazeltine Research, Inc., supra, apply with equal force and conviction in this case. Summary judgment in favor of Hazeltine was also granted in Hazeltine Research, Inc., v. DeWald Radio Mfg. Co., 276 App.Div. 1001, 95 N.Y.S.2d 772. In that case the licensee had set up a defense of repudiation as reported in 194 Misc. 81, 84 N.Y.S.2d 597, when the case was before the special term of the New York Supreme Court.

The final defense in opposition to this motion for summary judgment is that Air King holds itself not obligated to pay percentage royalties to Hazeltine under the provisions of the license agreement. There seems to be no need to labor this point because the provisions of the contract, including percentage payments, have all been passed on, and adversely to the position taken by Air King, in Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., supra, as well as in Hazeltine Research, Inc., v. Admiral Corporation, supra.

Moreover it must be stressed that were there any ambiguity in the contract in respect to the provisions relating to royalty payments, the practical interpretation given by the parties over the period of years preceding the attempted repudiation is entitled to great weight; Brooklyn Life Insurance Co. of New York v. Dutcher, 95 U.S. 269, 24 L.Ed. 410; Carthage Tissue Paper Mills v. Village of Carthage, 200 N.Y. 1, 93 N.E. 60. The Lieberman affidavit recites: "I am informed * * * some question has been raised as to whether it (the license agreement) requires payment of royalties on all apparatus sold by the licensee whether covered by Hazeltine patents or not. It was my understanding that it did have such requirement, and I know that during my presidency we paid royalties to Hazeltine on our radio receivers without regard to how many, if any, of the Hazeltine patents were used in each piece of apparatus."

Lieberman had been president and majority stockholder of Air King and its predecessor from 1920 to 1946, and participated in all the negotiations that led to the signing of the license agreement. In his affidavit he also avers that an important reason for Air King's entering into the agreement was to avail itself of the engineering assistance which Hazeltine furnished its licensees.

Henry D. Halperin, who was vice-president of Air King from 1935 to 1945, recites in his affidavit that he participated with Lieberman in all the negotiations, and has personal knowledge of the terms of the agreement, and that what Lieberman has said corresponds with his own knowledge of the matter.

Air King does not dispute the fact that from 1941 until April 1948 it made royalty payments to Hazeltine and its predecessor based on all sets sold whether or not any of the defendant's patents were used in any particular apparatus.

In Carthage Tissue Paper Mills v. Village of Carthage, supra, 200 N.Y. at page 14, 93 N.E. at page 64, it is said: "Practical construction by uniform and unquestioned acts from the outset, especially when continued for a long period of time, is entitled to great, if not controlling, weight, for it shows how the parties who made the contract understood it. If they do not know what they meant, who can know? Such a construction is presumed to be right, because it was made by the parties themselves when under the influence of conflicting interests. This is true whether the construction is by contemporaries or their successors * * *".

Thus it appears that nothing of substantial or controlling effect is presented in the opposition to this motion that has not been urged before.

Air King, on this motion, seems to rely heavily on the affidavit of Mr. Crews; but in large measure this is a mere re-assertion of the contentions in the affidavit of George K. Woodworth which was filed on licensee's behalf in the Automatic case. Judge Magruder in that case said of it that it contained "many sweeping claims and charges" [176 F.2d 802] not made on personal knowledge as required by Rule 56(e) of the Federal Rules of Civil Procedure. The same characterization is applicable to the Crews affidavit. Essentially the basic and material facts before me are not disputed. That being so, the motion for summary judgment under Rule 56, so far as the validity of the license is concerned, is proper. The showing of unpaid royalty payments in the amount of $33,939.19 for the period ending May 31, 1949, as disclosed in the Binns affidavit, is not controverted.

Defendant's motion for summary judgment is granted. The amount of recovery due defendant from the plaintiff as royalty will be referred to a master for his report.

Settle order on notice.