**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0422n.06
Filed: June 22, 2006

**No. 04-6458 and No. 05-5042**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| RICHARD L. WEAVER | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CALDWELL TANKS, INC. | ) | WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant | ) | |

**Before: BOGGS, Chief Judge; GIBBONS, Circuit Judge and ROSE, District Judge***

**Rose, J. delivered the opinion of the court in which Boggs, C.J. joined.**

**Gibbons, J. delivered a separate opinion concurring in part and dissenting in part.**

   **Rose, District Judge.**  Defendant-Appellant Caldwell Tanks, Inc. ("Caldwell") appeals the

district court's summary judgment that Plaintiff-Appellee Richard L. Weaver ("Weaver") is entitled

to commissions pursuant to the Sales Representative and Consulting Agreement between Caldwell

and Weaver.  In a separate pleading, Weaver appeals the district court's summary judgment denying

him prejudgment interest and attorneys' fees.  For the reasons set forth below, we reverse in part,

and affirm in part, the district court's judgments, and remand the case for further proceedings.

**I. Background**

---

   *The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio sitting by designation.

This case arises out of a contract dispute between Weaver and Caldwell. On December 17, 1997, Caldwell purchased Weaver's silo and chimney construction business in a multi-party transaction. As part of the transaction, Weaver and Caldwell entered into a Sales Representative and Consulting Agreement (the "Agreement").

Caldwell purchased Weaver's Silo Building Machines systems ("WSBM") so that Caldwell could expand its business from building elevated steel water storage tanks into the construction of silos and stacking tubes for the storage of grain, coal and other products. Weaver and Bernard Fineman ("Fineman"), Caldwell's President, negotiated the purchase during the 1996-1997 time period.

The only component of the purchase transaction that is at issue is the Agreement. The specific Agreement language that is in dispute is found in Section 2 entitled "Sales Commissions and Consulting Fee" and is as follows:

> During the Term, the Company shall pay Weaver sales commissions and consulting fees as follows: (i) a 10% commission on all sales of WSBM equipment and parts approved by Company (excluding any sales of equipment and/or parts to affiliates of Company); (ii) a 3.5% commission on final gross contract price of chimneys and silos (other than water tanks) sold and approved by the Company during a 10 year period commencing as of this date and (iii) $50/hour plus travel expenses as approved by the Company. All commissions earned by Weaver with respect to the sale of WSBM equipment and parts will be paid within 30 days after receipt of payment by the Company. All commissions earned by Weaver on sales of chimneys and silos will be paid in the form of progress payments as the Company is paid. All consulting fees shall be paid on a monthly basis upon acceptance by the Company of Weaver's time sheet.

(J. A. 31.)

Weaver argues that the Agreement provides that he will be paid a 3.5% commission on the final gross contract price of chimneys and silos sold and approved by Caldwell during a ten-year period beginning December 17, 1997, the date the Agreement was signed. Caldwell argues that

Weaver should only receive a commission on sales that he has procured and that Weaver has waived commissions. Both Parties agree that the Agreement is clear and unambiguous and that the case is one of contract interpretation.

Weaver testified that the first silo projects that he learned about were Indiana projects that were completed in the fall of 2002. When he discovered that the Indiana projects had been completed and that Caldwell had probably been paid for these projects, Weaver contacted Fineman and asked about his commissions. After not receiving a satisfactory response from Fineman, Weaver filed this suit against Caldwell.

Caldwell responds that, from the time the Agreement was consummated until the Indiana project began in 2002, Weaver did not claim to be entitled to commissions. Weaver, according to Caldwell, did not then claim to be entitled to commissions despite allegedly having knowledge of silo sales and projects as early as 2001.

Weaver brought this action on April 16, 2003, claiming to be entitled to commissions pursuant to the Agreement. Caldwell moved to dismiss, arguing that Weaver was not entitled to commissions. In a Memorandum and Order dated September 25, 2003 (the "September 2003 Order"), the United States District Court for the Western District of Kentucky (the "District Court") denied Caldwell's motion to dismiss.

In denying Caldwell's motion to dismiss, the District Court found that the Agreement is clear that Weaver was to receive commissions on all sales by Caldwell other than tank sales. The District Court also denied the motion to dismiss on the grounds of waiver because there was a factual dispute as to whether Weaver had knowledge of the other Caldwell sales in the past and only recently decided to complain to the Court regarding the past commissions.

Caldwell then filed a motion to alter, amend or vacate the September 2003 Order. In an order dated November 4, 2003 (the "November 2003 Order"), the District Court responded to the motion to alter or amend and, among other things, explained that it did not enter a contractual judgment in Weaver's favor because Weaver did not move for summary judgment on any contractual issue. The November 2003 Order denied Caldwell's motion to alter, amend or vacate the September 2003 Order.

After engaging in discovery, both Parties moved for summary judgment. In a Memorandum and Order dated November 5, 2004, and entered on November 9, 2004 (the "November 2004 Order"), the District Court said that the Agreement does not require Weaver to have procured or to have assisted with the sales of equipment or merchandise to be entitled to a commission, that Weaver earns the commission by compliance with his own obligations when the sale occurs, that the term "earned" in the Agreement does not place limitations on Weaver's right to a commission and that Weaver has not waived his right to a commission. The District Court found that Weaver is entitled to the commissions set forth in the Agreement, granted Weaver's motion for summary judgment and denied Caldwell's motion for summary judgment.

Weaver then filed a motion for prejudgment interest, postjudgment interest and attorneys' fees. In a Memorandum and Order dated December 16, 2004 (the "December 2004 Order"), the District Court denied this motion. The District Court denied prejudgment interest because it determined that the damages are unliquidated and equity does not require prejudgment interest in this case. Attorneys' fees were not granted because there is no applicable statute or contractual provision and equity does not warrant an award of attorneys' fees. Finally, the District Court determined that an award of post-judgment interest would be premature and that such interest could

be determined under the statute if appropriate.

Caldwell now appeals the District Court's summary judgment that Weaver is entitled to commissions pursuant to the Agreement. In addition, Weaver appeals the District Court's summary judgment denying him prejudgment interest and attorneys' fees.

## II. Analysis

### A. Jurisdiction

The District Court had diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. This Court's jurisdiction over both appeals is proper under 28 U.S.C. §1291 which grants appellate jurisdiction over all final decisions of the district courts. In this case, the November 2004 Order is a final and appealable order and is designated as such by the District Court. Further, the December 2004 Order is final to the extent that it denies prejudgment interest and attorneys' fees.

### B. Standard of Review

Caldwell appeals the District Court's grant of summary judgment to Weaver. The District Court's grant of summary judgment, including the District Court's legal conclusions, are reviewed *de novo* by this Court. *F.D.I.C. v. First Heights Bank*, *FSB*, 229 F.3d 528, 534 (6th Cir. 2000).

Upon *de novo* review, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.* Finally, the Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56©).

In addition to applying the federal procedural standard for motions for summary judgment, as a federal court exercising diversity jurisdiction, the court must apply the substantive law of the state in which the claim is made unless the law of another state is specifically implicated. *Hisrich v. Volvo Cars of N. America*, *Inc.*, 226 F.3d 445, 449 (6th Cir. 2000). Specifically, the substantive law of Kentucky must be applied in this case in accordance with the then-controlling decision of the highest court of Kentucky. *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo, M.D. v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998)). Also, to the extent that the highest court in Kentucky has not addressed the issue presented, this Court must anticipate how Kentucky's highest court would rule. *Id.* (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)).

In addition to Caldwell's appeal, Weaver appeals the denial of his postjudgment motion for prejudgment interest and attorneys' fees. The standard of review for appeals involving prejudgment

interest and attorneys' fees is abuse of discretion. *Hoover v. Provident Life and Accident Insurance Co.*, 290 F.3d 801, 809 (6th Cir. 2002); *Shore v. Federal Express Corp.*, 42 F.3d 373, 380 (6th Cir. 1994). An abuse of discretion occurs when the court applies the incorrect legal standard, misapplies the correct legal standard or relies on clearly erroneous findings of fact. *First Technology Safety Systems, Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993).

## C. Analysis of Caldwell's Appeal

Caldwell makes two arguments on appeal. Caldwell's first argument involves interpretation of the Agreement. Caldwell raises three issues regarding interpretation of the Agreement.

Caldwell's main argument involves Weaver's alleged waiver of his right to a commission pursuant to the Agreement. Caldwell raises two issues regarding waiver of the right to a commission. Each of the five issues raised by Caldwell will be addressed seriatim.

## 1. Whether the Agreement required Weaver to procure or assist with sales of the equipment or merchandise to earn a commission

The District Court determined that "the Agreement does not require Weaver to have procured or to have assisted with the sales of equipment or merchandise to be entitled to a commission." Caldwell now offers three arguments as to why Weaver was required to procure or assist with sales of the equipment or silos in order to earn a commission.

First, Caldwell argues that its treatment of Weaver as both a sales representative and a consultant with a distinct pay schedule for each shows that Section 2 of the Agreement was not intended to be payment for Weaver's noncompetition agreement with Caldwell and that Section 2 of the Agreement required Weaver to procure or assist with sales. There is evidence that Caldwell hired Weaver as both a consultant and a sales representative and that Section 2 of the Agreement provides for compensation for each. However providing for two separate positions and providing

for compensation for each does not lead to the conclusion that the Agreement required Weaver to procure or assist with sales of the equipment or silos in order to earn a commission.

Caldwell next argues that interpretation of Section 2 of the Agreement using the Kentucky Supreme Court's definition of "earn" and the Kentucky Legislature's definition of "sales representative" results in the conclusion that Section 2 of the Agreement requires Weaver to procure or assist with sales in order to receive commission. This argument is considered in light of the fact that both Parties agreed that the Agreement is clear and unambiguous.

When a contract is clear and unambiguous, it can be understood without resorting to parol evidence to find the intent of the parties and parol evidence is not admissible. *Friction Materials Co., Inc. v. Stinson*, 833 S.W.2d 388, 391 (Ky. Ct. App. 1992). Further, words in a clear and unambiguous contract are to be given their commonly understood meanings unless they are technical terms. *Cook United, Inc. v. Waits*, 512 S.W.2d 493, 495 (Ky. Ct. App. 1974). If technical terms are used, they are given the meanings ascribed to those words by parties knowledgeable in the technical field that is relevant to the contract. *Id.* In this case, then, parol evidence is not admissible and words are to be given their commonly understood meanings unless they are technical terms.

Regarding commonly understood meanings, Caldwell argues that, under Kentucky law, a sales representative only receives commissions on sales that were solicited by the "sales representative." The basis for this argument is a section of the Kentucky Code which defines a "sales representative" as:

> a person who: (a) Contracts with a principal to solicit wholesale orders; (b) Is compensated, in whole or in part, by commission…

KRS 371.370(4). However, this excerpt from the Kentucky Code indicates that a "sales representative" is compensated in whole or in part by commissions but it does not indicate that those

commissions are only on sales that were solicited by the "sales representative." Further, as the District Court said in the November 2003 Order, "KRS Chapter 371 generally concerns the formality and the assignability of contracts" and "[t]he particular language in KRS 371.370 would not necessarily provide the definition of terms contained in a written sales contract nor would it prohibit the parties from entering into an agreement which defined the terms under which commissions are earned."

Caldwell also points to the definition of "commission" in Black's Law Dictionary which currently defines a "commission" as "[a] fee paid to an agent or employee for a particular transaction, [usually] as a percentage of the money received from the transaction." *Black's Law Dictionary* 264 (7th ed. 1999). Again, this definition does not require that the agent or employee be involved in the solicitation of the transaction.

Caldwell next argues that Weaver only paid his sales representatives for commissions they earned when he owned and operated Weaver Silo Building Machines, Inc. and it is now contradictory for Weaver to assert that he has now earned commissions by merely complying with the terms of a noncompetition agreement. However, what Weaver did when he was operating his Company is parol evidence and, therefore, not to be considered by the Court.

Caldwell then turns to the caselaw for a definition of the term "earn." It first points to *Commissioners of the Sinking Fund of City of Louisville v. South Central Bell Telephone Co.*, 809 S.W.2d 380 (Ky 1991), wherein the Kentucy Supreme Court defined the term "earned" as:

> Wages or money received for services is the ordinary meaning attached to the use of the word "earnings." Other jurisdictions have defined "earned" and "earned income" as either requiring or implying that some labor or services have been performed in order to entitle the recipient to the money.

*Id.* at 381. As the District Court indicated in the November 2003 Order, the *Sinking Fund* case

"appears to have very little to do with the definition of 'earned' under a sales agreement." This case "concerns the definition of 'earned' under a municipal occupational license tax." Further, if this case could be applied, the conclusion would be that Weaver must earn the commissions by performing the services required by the Agreement and Weaver is required by the Agreement to provide consulting services upon request and, later, to not compete with Caldwell.

Caldwell identifies other caselaw containing a definition of "earned" in real estate broker terms that he urges should be used to interpret the Agreement. Courts have held that a real estate broker earns his or her commission when he or she produces a purchaser who is ready, able and willing to purchase the property. *Casey v. Hart Wallace & Co.*, 222 S.W. 111, 112 (Ky. 1920); *Cox v. Enters*, 887 S.W.2d 563, 565 (Ky. Ct. App. 1994). However, as with the *Sinking Fund* case, these cases refer to real estate brokers and the sale of real estate and have little to do with the Agreement at hand.

In sum, the Agreement is a clear and unambiguous contract between the Parties entered into as part of the sale of Weaver's company to Caldwell. When given their commonly understood meanings, the words in the contract do not require that Weaver procure or assist with sales in order to receive a commission.

Section 2 of the Agreement clearly says that Caldwell will pay Weaver sales commissions on certain specified sales. Specifically, the Agreement provides that Caldwell will pay commission on chimneys and silos, other than water tanks, that are sold and approved by Caldwell.

The Agreement does not require Weaver to have procured or to have assisted with the sales to be entitled to commissions. Therefore, under the terms of the Agreement, the commissions are earned when a sale of chimneys and silos, other than water tanks, occurs if Weaver is in compliance

with his obligations under the Agreement. Among Weaver's obligations under the Agreement is a requirement that he serve as a consultant when asked and a requirement that he not compete with Caldwell anywhere in the world for five years after termination of the Agreement. The Agreement also describes how the commissions earned by Weaver are to be paid but, again, it does not require Weaver to have procured or to have assisted with the sales to be entitled to a commission.

Caldwell's final argument regarding interpretation of the Agreement is that the "sold and approved" language in the Agreement demonstrates that Weaver is not entitled to commissions. Caldwell specifically argues that the District Court disregarded the fact that Weaver must contribute to the sale of silos. However, the District Court determined that Caldwell was not required to contribute to the sale of silos, a finding which has been confirmed above by this Court.

The Agreement clearly provides that Weaver is entitled to "a 3.5% commission on final gross contract price of chimneys and silos (other than water tanks) sold and approved by the Company …." This language does not require that Weaver contribute to the sale of chimneys and silos to receive a commission, nor does any other language in the Agreement.

Of note, Caldwell cites parol evidence regarding the drafting of the Agreement. Of course, this parol evidence is not considered. The analysis turns to Caldwell's second issue.

**2. Whether the conduct of the Parties establishes that Weaver was only entitled to commissions on sales that he procured**

Caldwell argues that the District Court should have examined the conduct of the parties in the performance of the Agreement when determining whether Weaver is entitled to commissions. Caldwell bases this argument on the doctrine of "contemporaneous construction" used by Kentucky Courts.

The doctrine of "contemporaneous construction" provides that "courts are required to give

great weight to the interpretation which the parties have placed on an ambiguous contract. The construction of the parties is best evidenced by their conduct with respect to the agreement." *A. L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F.2d 118, 120 (6th Cir. 1981). In this case, however, the contract is clear and unambiguous so the doctrine of "contemporaneous construction" does not apply.

Caldwell then argues that Kentucky courts have held that, even when a contract is not ambiguous or subject to more than one interpretation, the court may still consider the conduct of the parties in interpreting the contract. *See Lafitte Co. v. United Fuel Gas Co.*, 177 F. Supp. 52, 59 (E.D. Ky. 1959), *aff'd*, 284 F.2d 845 (6th Cir. 1960). However, this argument is not persuasive. The court in *Lafitte*, and the only court cited by Caldwell, is not a Kentucky court but a federal district court interpreting Kentucky state court caselaw. Also, the court in *Lafitte* appears to be determining how a contract would be interpreted if it were ambiguous and is citing New York state law as the basis for the interpretation. *Id.* (citing *Air King Products Co. v. Hazeltine Research*, 94 F. Supp. 85, 92 (E.D.N.Y. 1950).

In sum, the conduct of the parties is not relevant to the interpretation of a clear and unambiguous contract. The analysis turns to Caldwell's third issue.

**3. Whether the entire sales transaction and context in which the Agreement was entered confirms that Weaver was entitled to commissions only on sales that he procured**

Caldwell next argues that the Agreement should be viewed in the context in which it was executed. This argument is also without merit.

Parol evidence is not admissible to determine the meaning of a clear and unambiguous contract such as the Agreement that is now before the Court. *Friction Materials,* 833 S.W.2d at 391. Absent an ambiguity, the meaning of the contract must be determined from the "four corners" of the

contract. *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000).

In this case, since the context in which the Agreement was executed is not within the "four corners" of the Agreement, it is not admissible to determine the meaning of the Agreement. The Court must look to the Agreement for its meaning.

In sum, the Agreement does not require Weaver to procure or assist with sales of the equipment or merchandise to earn a commission. In addition, neither the conduct of the parties nor the context in which the Agreement was executed are admissible to determine its meaning. The analysis turns to the first of Caldwell's two issues regarding waiver of the right to a commission.

**4. Whether Weaver's knowledge of Caldwell's silo sales and projects affects Weaver's entitlement to enforce the Agreement**

Caldwell argues that Weaver's knowledge of Caldwell's silo sales and projects affects Weaver's entitlement to enforce the Agreement. In support of this argument, Caldwell cites no caselaw but does cite from the December 2004 Order wherein the District Court said,

> Plaintiff did not assert his rights in a particularly timely fashion. While this does not effect [sic] his entitlement to enforce the contract, it does provide an equitable basis for denying prejudgment interest.

Since Caldwell cites no caselaw in support of this argument, the argument must fail. This argument fails with the understanding that it is inherent within the next and final issue raised by Caldwell and with the understanding that, in the December 2004 Order, the District Court said that Weaver's knowledge did not affect his entitlement to enforce the contract. The analysis turns to Caldwell's final issue.

**5. Whether Weaver's failure to object to the manner in which the Agreement was performed constitutes waiver and estoppel**

Caldwell's final issue is that Weaver's failure to object to not receiving commissions in a

timely manner constitutes waiver and estoppel. However, this issue cannot be reviewed because the District Court did not rule on the issue of waiver and estoppel.

This analysis begins with the September 2003 Order. The docket sheet indicates that the September 2003 Order denies Defendant's motion for summary judgment as does the final sentence in the September 2003 Order. (J. A. 2, 77.) However, the motion being addressed is Defendant's motion to dismiss. (R. 2, J.A. 2.)

The September 2003 Order, among other issues, addresses Defendant's motion to dismiss based upon waiver. (J. A. 77.) Regarding waiver, the September 2003 Order finds that,

> [t]he facts appear in dispute as to whether Weaver had knowledge of the other Caldwell sales in the past and only recently decided to come forward and complain about it to the Court. Weaver's knowledge, along with other factors, is pivotal as to whether he waived any contractual commission rights. If Weaver did not know of the previous sales, it seems unlikely that Kentucky law would support waiver. Because these facts are disputed, knowledge of the sales by Caldwell, the motion to dismiss on the grounds of waiver must be denied at this time.

(Id.)

The November 2003 Order was then issued in response to Defendant's motion to alter, amend or vacate the September 2003 Order. The September 2003 Order was not altered, amended or vacated by the November 2003 Order and nothing was said in the November 2003 Order regarding waiver.

Discovery was then conducted followed by the filing of motions for summary judgment by both Parties. The motions for summary judgment were addressed in the November 2004 Order.

Regarding waiver, the District Court indicated in the November 2004 Order that the September 2003 Order denied Caldwell's motion for summary judgment and, in doing so, concluded that "… Weaver has not waived his right to a commission." The District Court further said,

"Caldwell's motion for summary judgment consists of a reargument and amplification of previous arguments which this Court has already rejected." Finally, the November 2004 Order denied Caldwell's motion for summary judgment. Nothing further was said about Caldwell's defense of waiver.

Following issuance of the November 2004 Order, Weaver moved for an award of prejudgment interest, post-judgment interest and attorneys' fees. The December 2004 Order denied this motion and indicated that, "[p]laintiff did not assert his rights in a particularly timely fashion."

In sum, the September 2003 Order addressed Caldwell's motion to dismiss and not a motion for summary judgment as was later indicated by the District Court. The September 2003 Order also found that there was a factual dispute regarding waiver.

The November 2004 Order then indicated that the September 2003 Order denied Caldwell's motion for summary judgment and that the September 2003 Order determined that Weaver did not waive his right to a commission. However, the September 2003 Order did neither. The November 2004 Order said nothing further regarding waiver other than indicating that Caldwell's motion for summary judgment, which included the waiver defense, was denied. Therefore, the District Court initially found a factual dispute regarding waiver but never indicated if and how the factual dispute was resolved.

Technically, the November 2004 Order overrules Caldwell's motion for summary judgment and Caldwell's motion for summary judgment included waiver and other matters. Substantively, it is not clear whether the District Court resolved the factual dispute regarding waiver that it found in ruling on Caldwell's motion to dismiss and whether the District Court intended to deny Caldwell's motion for summary judgment regarding waiver. Therefore, as a practical matter, the

issue of whether Weaver's failure to object to the manner in which the Agreement was performed constitutes waiver and estoppel cannot be reviewed by this Court.

**D. Analysis of Weaver's Appeal**

Weaver raises three issues on appeal. Each will be addressed seriatim.

**1. Whether the District Court erred in determining that Plaintiff's damages are unliquidated**

The District Court, relying upon *Nucor Corp. v. General Electric Co.*, 812 S.W.2d 136, 141 (Ky. 1991), found that the damages in this case were unliquidated and there were no facts to suggest that equity requires the payment of prejudgment interest. (December 2004 Order at 1.) The District Court further determined that the fact that Weaver did not assert his rights in a particularly timely fashion provides an equitable basis for denying prejudgment interest. (Id.)

Kentucky law provides that prejudgment interest is awarded when damages are liquidated. *Nucor*, 812 S.W.2d at 141. An award of prejudgment interest on unliquidated damages is at the discretion of the court. *Id.* at 142. Therefore, an award of prejudgment interest to Weaver turns first on whether Weaver's damages are liquidated or unliquidated.

Liquidated damages are those made certain or fixed by agreement of parties or by operation of law. *Id.* at 141 (citing *Black's Law Dictionary* 930 (6th ed. 1990)). Further, liquidated damages are "of such a nature that the amount is capable of ascertainment by mere computation, can be established with reasonable certainty, can be ascertained in accordance with fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values." *3D Enterprises Contracting Corporation v. Louisville and Jefferson County Metropolitan Sewer District*, 174 S.W.3d 440, 450 (Ky. 2005)(quoting 22 *Am. Jur. 2d DAMAGES* § 469 (2004)). Common examples of liquidated damages are a bill or note past due, an amount due on an open

account, or an unpaid fixed contract price. *Nucor*, 812 S.W.2d at 142. Also, failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value are liquidated damages in a breach-of-contract action. *Id.* at 144. Finally, amounts of unpaid commissions that are defined by contract are liquidated. *3D Enterprises*, 174 S.W.3d at 450 (citing *Cooper v. Hubbard*, 703 S.W.2d 494, 497 (Ky. App. Ct. 1986)).

Unliquidated damages are damages which cannot be determined by a fixed formula and must be established by a judge or jury. *Black's Law Dictionary* 419 (8th ed. 2004). Examples of unliquidated damages are damages for pain and suffering, future medical expenses and future lost wages. *Kentucky National Insurance Co. v. Fletcher*, Case No. 2003-CA-002541-MR, 2005 WL 678761 at *4 n.15 (Ky. Ct. App. 2005).

The damages in this case are commissions on sales. The amount of the commission is fixed by the Agreement at 3.5% of the final gross contract price of chimneys and silos (other than water tanks) sold and approved by the Company for the ten-year period commencing on December 17, 1997. The commissions are to be paid within thirty days after receipt of payment by Caldwell.

Although the ten-year period has not yet expired, at the point in time when Caldwell makes each commission payment, the amount of the payment will be certain, the date that Caldwell received payment for the chimney or silo for which a commission is being paid will be certain and the date that Caldwell is making the payment to Weaver will be certain. Said another way, each commission owed to Weaver, the date it should have been paid and the date it is actually being paid can be calculated for each sale of chimneys and/or silos. Weaver's damages pursuant to the Agreement are certain and fixed by the Agreement and can easily be calculated. Weaver's damages are, therefore, liquidated.

Under Kentucky law, prejudgment interest is paid on liquidated damages. Therefore, Weaver is entitled to prejudgment interest and the District Court's finding with regard to prejudgment interest is reversed. The District Court abused its discretion when it concluded that Weaver's damages were unliquidated and failed to grant prejudgment interest to Weaver. The analysis turns to the second issue raised by Weaver.

**2. Whether the District Court erred in determining that there is no equitable basis for prejudgment interest**

The District Court determined that there is no equitable basis for prejudgment interest. However, this finding need not be reviewed. As determined above, Weaver's damages are liquidated and he is, therefore, entitled to prejudgment interest pursuant to Kentucky law. Whether Weaver is entitled to prejudgment interest on an equitable basis is moot. The analysis turns to the final issue raised by Weaver.

**3. Whether the District Court erred in denying Weaver's post judgment motion for an award of attorneys' fees**

The District Court declined to award attorneys' fees to Weaver. Weaver now argues that he is entitled to attorneys' fees on a equitable basis because almost eight years have passed since the execution of the plain and unambiguously worded Agreement and Caldwell has yet to pay him his commissions. Further, Weaver has allegedly expended in excess of $27,000 in attorneys' fee to recover the commissions.

The District Court correctly determined that attorneys' fees are generally not recoverable in Kentucky absent express statutory or contractual provisions. *Kentucky State Bank v. AG Services, Inc.*, 663 S.W.2d 754, 755 (Ky. Ct. App. 1984). However, attorneys' fees may be awarded on a equitable basis at the discretion of the court depending upon the circumstances of the case. *Id.*

In this case there is no applicable statute and there is no provision in the Agreement for attorneys' fees. Further, the District Court found that there were no equitable grounds for awarding attorneys' fees. (December 2004 Order at 2.) This finding was based upon the District Court's determination that, while the language in the Agreement was unambiguous, both parties offered different interpretations and were uncertain of the Agreement's interpretation. Although not directly stated in this manner, the District Court appears to have determined that both Parties offered legitimate arguments. Finally, the District Court elected to not deviate from the standard rule that disfavors an award of attorneys' fees.

The District Court did not abuse its discretion when it failed to award attorneys' fees. The District Court did not apply the incorrect legal standard, misapply the correct legal standard or rely on clearly erroneous findings of fact.

### III. Conclusion

The District Court correctly interpreted and construed the Agreement. Upon *de novo* review, the language of the Agreement is clear and unambiguous. The Agreement does not require Weaver to have procured or to have assisted with the sales of equipment or merchandise to be entitled to a commission. In addition, the Agreement provides that Weaver is entitled to sales commissions on chimneys and silos, other than water tanks, that are sold and approved by Caldwell. This finding by the District Court is AFFIRMED.

The District Court's decision regarding Caldwell's waiver defense is either unclear or nonexistent. Therefore, this matter is REMANDED to the District Court for a determination if either Caldwell or Weaver is entitled to summary judgment regarding Caldwell's waiver defense and the appropriate subsequent action if any is required.

The District Court abused its discretion when it determined that Weaver's damages are unliquidated. Weaver's damages are liquidated and, to the extent that Weaver is entitled to commissions under the Agreement, pursuant to Kentucky law, he is entitled to prejudgment interest. The District Court's judgment regarding prejudgment interest is REVERSED.

The District Court did not abuse its discretion when it declined to award attorneys' fees to Weaver. Therefore, the District Court's judgment that Weaver is not entitled to attorneys' fees is AFFIRMED.

**JULIA SMITH GIBBONS, concurring in part and dissenting in part.** I agree with the majority opinion's analysis that the contract is unambiguous and that Weaver was entitled to commissions on chimneys and silos, other than water tanks, sold or approved by Caldwell, whether or not Weaver procured or assisted with the sales. I disagree that we must remand on the waiver issue and believe that the district court's disposition of this issue is sufficiently clear to permit review and also correct. I also disagree with the majority opinion's view that the damages are liquidated. Thus, I would affirm on all issues.

With regard to waiver, the November 2004 order does misstate the substance of the waiver ruling in the September 2003 order. Nevertheless, the November 2004 order clearly indicates that the district court concluded that Weaver did not waive his right to a commission and that it is a final and appealable order, disposing of all liability issues in the case. The district court's ruling that Weaver did not waive his right to a commission comports with the record on the summary judgment motion, for there is no evidence in that record from which a trier of fact could find that Weaver acted in a manner inconsistent with his right to receive commissions. *See Harris Brother Construction Co. v. Crider*, 497 S.W. 2d 731, 733 (Ky. 1973). Assuming full knowledge on Weaver's part, a failure to come forward promptly in the context presented here does not amount to the intentional relinquishment of a known right, as required under Kentucky law. *See Bates v. Grain Dealers Nat'l Mut. Fire Ins. Co*., 283 S.W.2d 3, 5 (Ky. 1955).

Turning to the district court's refusal to award prejudgment interest, the majority opinion correctly sets forth the rules that apply in determining whether damages are liquidated or unliquidated–the issue that controls whether the district court had discretion to deny prejudgment interest. But, in my view, it incorrectly concludes that damages were liquidated simply because they

were based on commissions that could be calculated. This case presents countless opportunities for dispute about the amounts owed. Some areas of difference could include numbers and timing of sales, the amount of the final gross contract price of particular sales, whether the required approval by the Company occurred, and numbers of hours expended by Weaver. The damages here are quite plainly unliquidated.