**FRICTION MATERIALS COMPANY, INC., Appellant/Cross–Appellee,**

v.

**James W. STINSON, Appellee/Cross–Appellant.**

**Nos. 91–CA–116–MR (Direct Appeal), 91–CA–223–MR (Cross–Appeal).**

Court of Appeals of Kentucky.

June 12, 1992.

David L. Bohannon, Richmond, for appellant/cross-appellee.

John F. Lackey, Richmond, Lela E. Shepherd, Bowling Green, for appellee/cross-appellant.

Before HOWERTON, HUDDLESTON and MILLER, JJ.

HOWERTON, Judge.

This is a contract dispute in which James Stinson was terminated as sales representative with Friction Materials Company (FMC), and he sued for sales commissions. From an adverse judgment, FMC appeals. Stinson cross-appeals from the denial of prejudgment interest. We affirm on the direct appeal but remand on the cross-appeal for further proceedings.

FMC sells industrial friction products in a multi-state area. Stinson signed a sales representative agreement with FMC to cover the period of November 24, 1986, through December 31, 1987. Stinson had previously worked for H.K. Porter Company and his division had been bought by FMC. At H.K. Porter, he worked for a salary plus commission, whereas at FMC, his only compensation was a commission for sales. The agreement provided that either party could terminate the relationship without cause on 30 days' written notice. During the course of this agreement, FMC deleted the General Electric (GE) account from Stinson's six-state territory because of problems with an earlier order which FMC officials thought Stinson should have handled differently. In October 1987, FMC notified Stinson that it was cancelling their agreement effective November 20, 1987; this date was subsequently changed to November 30, 1987. Stinson sued for breach of contract and unpaid commissions. In a bench trial, Stinson was awarded $13,626.59 in unpaid com-

missions and court costs, plus post-judgment interest.

The issues on direct appeal are whether the trial court: (1) properly exercised jurisdiction, (2) erred in excluding parol evidence to determine the intent of the agreement, and (3) erred in finding that the GE exclusion was effective August 3, 1987. On cross-appeal, Stinson contends it was error to deny prejudgment interest.

FMC first argues that it was not subject to the personal jurisdiction of the court because FMC is a Delaware corporation with its principal place of business in Huntington, Indiana. FMC has no offices or employees in Kentucky and characterizes Stinson as an independent contractor who solicits orders and makes calls for more than one company. The sales representative agreement was negotiated and signed in Indiana. Under KRS 454.210(2)(a), Kentucky may assert personal jurisdiction "over a person [including a corporation] who acts directly or by an agent, as to a claim arising from the person's: 1. Transacting any business in this Commonwealth."

FMC concedes that it would be subject to the jurisdiction of the court if one of its customers, GE for instance, sued it on a claim arising out of FMC's supplying products to the customer. But FMC differentiates the transaction between Stinson and FMC as one arising from their contract executed in Indiana and not from FMC's business with its Kentucky customers.

■ Kentucky's long-arm statute is designed to permit the exercise of personal jurisdiction over nonresident defendants while complying with federal constitutional requirements of due process. *Texas American Bank v. Sayers*, Ky.App., 674 S.W.2d 36, 38 (1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985). KRS 454.210 allows the courts "to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants." *Mohler v. Dorado Wings, Inc.*, Ky.App., 675 S.W.2d 404, 405 (1984). Inherent in the proper exercise of personal jurisdiction is the requirement that the non-resident defendant have certain minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940); *see also Mohler*, 675 S.W.2d at 405. To determine the outer limits of personal jurisdiction, the following three-part test has been put forth:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968), citing *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *See also Perry v. Central Bank & Trust Co.*, Ky.App., 812 S.W.2d 166 (1991).

■ The contract between Stinson and FMC governed their relationship, and it was the instrument by which FMC reaped substantial commercial benefits in Kentucky. While the contract may have been negotiated and executed in Indiana, Stinson was contacted in Richmond right after Stinson's division at H.K. Porter had been sold to FMC, and was asked to come to Indiana to negotiate the agreement. Much of Stinson's activities were carried on in Kentucky, as well as the other five states in his territory. The agreement contained no choice of law clause. We believe that FMC has met the three-pronged test of *McGee, supra*, by directing the representative relationship. It was not unreasonable to think that FMC could be hauled into court in Kentucky over the sales representative agreement. To limit suit to only Indiana is

unreasonable when the sales representatives garnering the sales for FMC work in widespread territories. The trial court properly exercised personal jurisdiction pursuant to KRS 454.210.

■ The next issue deals with the time at which commissions are triggered. Stinson admits that whether he is a representative at the time of the invoice governs his entitlement to commissions on after-market sales. The agreement provides in paragraph D3 that commissions are earned when the invoice is paid by the purchaser, and paragraph E3 provides that upon termination of the agreement, commissions are payable on "all orders submitted by the REPRESENTATIVE" prior to the effective date of termination. It was stipulated that the sales representatives did not submit orders to FMC, but merely solicited the orders from the customers, and it was the customers who sent in the orders, which FMC would accept or reject. Then FMC would invoice and ship the items ordered. The trial court found that the agreement was unambiguous and did not permit parol evidence to explain the intent of the parties.

FMC argues that Stinson was entitled to commissions only if he were still the sales representative on the *invoice* date, and thus he would not be entitled to commissions on items *ordered* but not yet shipped before the effective date of contract termination. Stinson contends that is his understanding on "after market sales," but that on "original equipment purchases," he is due the commission not only on *orders* at termination, but also on items *invoiced* after the beginning date of his contract. In effect, he would get some commissions for sales on *orders* generated by someone else. Stinson maintains this agreement was reached to help defray start-up expenses and to compensate him for having to go from a salary-plus-commission status to commission only.

The trial court agreed that Stinson was entitled to commissions on items ordered before but shipped after he became sales representative for the territory. Some of these sales had been generated while Stinson still worked for H.K. Porter, and he was merely reaping the benefits of his work there. Other sales were admittedly earned by earlier representatives. The trial court also agreed with Stinson that he could reap the benefit of commissions earned on mere orders placed before contract termination. This interpretation is consistent with the wording of the contract.

■ The contract was negotiated and drafted by FMC and was essentially a "take it or leave it" proposition. If a contract has a plain meaning that can be understood without resorting to parol evidence to find the intent of the parties, then parol evidence is not admissible. *Cf. National Equipment Co. v. Heib,* Ky., 266 S.W.2d 349, 351 (1954). The agreement here is capable of interpretation without reading any ambiguity into it. Since FMC drafted the contract and is considered the master of its words, *Warfield Natural Gas Company v. Clark's Adm'x,* 257 Ky. 724, 734, 79 S.W.2d 21 (1934), we will not make an ambiguity where none exists. The trial court did not err in excluding parol evidence.

■ Next, FMC argues that Stinson was not entitled to $6,549.26 in commissions for sales generated by orders from GE placed after July 13, 1987. This is the date FMC contends the agreement was amended to exclude GE from Stinson's territory. Stinson argued, and the court agreed, that the amendment was not effective until agreed to by Stinson on August 3, 1987. The letter of July 13 stated that "[e]ffective today, the General Electric account is being removed from your territory," and asked that Stinson initial and return a copy of the amendment to FMC. Stinson evidently made a counter proposal which was rejected by FMC, and Stinson finally signed the amendment on August 3, 1987.

Stinson alleges that FMC received orders from GE on July 14 totaling $190,262. If the amendment were effective July 13, Stinson would be due nothing on these sales. We agree with Stinson that there was no meeting of the minds concerning changing this aspect of the agreement until he signed the amendment on August 3,

1987. The trial court did not err in awarding Stinson commissions on the GE account.

 Finally, we turn to Stinson's cross-appeal in which he characterizes the award as liquidated damages and urges that he is entitled to prejudgment interest. Although the trial court did not specifically address the issue, Stinson claims the question on entitlement was raised and preserved for review by his complaint and trial memorandum. FMC does not dispute that contention. The trial court determined that Stinson was entitled to the commissions, and thus he was entitled to them when they were earned on the sales, not merely when he received a judgment in his favor. The question is not so much whether a claim is liquidated or unliquidated, but whether "justice and equity demand an allowance of interest to the injured party.... Where under a contract a debt is due at a certain time, both reason and authority say that it carries interest from that time." *Dalton v. Mullins*, Ky., 293 S.W.2d 470, 477 (1956). *See also Finucane v. Prichard*, Ky.App., 811 S.W.2d 348 (1991); *Borden v. Martin*, Ky.App., 765 S.W.2d 34 (1989). Stinson was due his commissions in 1987, and payment was long delayed. We believe fairness dictates the additional compensation.

This is a breach of contract case, and although the amount claimed was vigorously disputed, the amount was readily ascertainable. Interest should follow as a matter of course for what in substance is an unpaid debt. The *Restatement (Second) of Contracts* § 354 provides:

(1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.

(2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due.

Whether this case is factually a subsection (1) or (2) claim, we conclude that prejudgment interest should be awarded.

The judgment of the Madison Circuit Court is affirmed on the direct appeal, but the case is remanded for a determination of prejudgment interest due on Stinson's recovery.

All concur.