RENDERED: NOVEMBER 5, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0044-MR

ANYCONNECT US, LLC                                         APPELLANT


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE OLU A. STEVENS, JUDGE
                    ACTION NO. 18-CI-002259


WILLIAMSBURG PLACE, LLC; SCOTT
ABELL; AND ABELL ROSE, LLC                                APPELLEES


OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; GOODWINE AND McNEILL,
JUDGES.

GOODWINE, JUDGE: Appellant AnyConnect (US) LLC ("Tenant") appeals

from an order entered by the Jefferson Circuit Court granting Appellee

Williamsburg Place, LLC's ("Landlord") motion for summary judgment. After a

careful review of the record, we affirm in part, reverse in part, and remand for

additional proceedings consistent with this Opinion.

## BACKGROUND

This action arises from a commercial lease[1] between Landlord and Tenant in October 2016. Tenant agreed to rent approximately 4,700 square feet of office space in a building located at 9400 Williamsburg Plaza, Suite 220 in Jefferson County, Kentucky (the "Premises"). The Lease's term was three years, beginning on November 1, 2016 and ending on October 31, 2019. Rent was due in advance on the first day of each month. Rent for the term beginning November 1, 2016 through October 31, 2017 was $4,354 per month. Rent increased to $5,340 per month for the succeeding 24-month period beginning November 1, 2017 through October 31, 2019.

The Lease contains several provisions relating to notice and default pertinent to the issues on appeal. Specifically, paragraph 6 of the Lease provides: "Tenant has deposited $4,000 with the Landlord as security for Tenant's performance of this lease. Landlord will refund Tenant's deposit within seven days of the end of the lease term provided there has [sic] not been any uncorrected defaults by Tenant during the Lease." Paragraph 18 of the Lease requires Landlord to provide written notice of default to Tenant prior to starting any legal action to recover possession of the Premises:

> 18. Notice of Default. Before starting a legal action to recover possession of the Premises based on Tenant's

---

[1] The commercial lease is titled Gross Lease for Part of Building (the "Lease").

default, Landlord will notify Tenant in writing of the default.  Landlord will take legal action only if Tenant does not correct the default within ten days after written notice is given or mailed to Tenant.

Paragraph 19 of the Lease states:  "19.  Quiet Enjoyment.  As long as Tenant is not in default under the terms of this lease, Tenant will have the right to occupy the Premises peacefully and without interference."  Paragraph 23(d) further addresses defaults under the Lease:

(d) Tenant shall be in default of this lease, if Tenant fails to fulfill any lease obligation or term by which the Tenant is bound.  Subject to any governing provisions or law to the contrary, if Tenant fails to cure any financial obligation within seven (7) days (or any other obligation within thirty (30) days) after written notice of such default is provided by Landlord to Tenant, Landlord may take possession of the Premises without further notice, and without prejudicing Landlord's right to damages.  In the alternative, Landlord may elect to cure any default and the cost of such action shall be added to Tenant's financial obligation under this Lease.  Tenant shall pay all costs, damages and expenses suffered by Landlord by reason of Tenant's defaults[.]

Last, paragraph 27 of the Lease states:  "This lease will be governed by and construed in accordance with the laws of the Commonwealth of Kentucky."

Tenant paid rent due under the Lease for the first year.  Tenant, however, ceased paying rent beginning November 1, 2017.  This was the first month rent increased to $5,340.

In early December 2017, Tenant asked Landlord about floor plan dimensions and a price for any smaller space Landlord might have. Landlord does not appear to have directly responded to Tenant's inquiry. Instead, on December 8, 2017, Landlord sent Tenant a notice of default letter,[2] stating in relevant part:

> This letter is to notify you that your $5,340 rent for the month's [sic] of November and December, 2017 have [sic] not been received. Rent is due on the first of each month, as indicated in Section 4 of the Lease dated Oct. 21, 2016. This is notice that your lease will be terminated and you must vacate the property by December 18, 2017, if we have not received your rent in full, by this date. The total amount owed under your lease through December 1, 2017, is $10,680.
>
> Please remit immediate payment to, Williamsburg Place, LLC, 503 Croydon Ct., Louisville Ky., 40222-5551.

After receiving what it described as the "eviction notice," Tenant inquired again if other space was available. Landlord responded via email on December 12, 2017, stating: "Irrelevant until past due rent is paid in full."

On December 15, 2017, Tenant emailed Landlord, stating: "I have to inform you that AnyConnect will be vacating the space located at 9400 Williamsburg Plaza Ste 220, today and over the weekend. We will be out of the space by 12/18/17." Tenant vacated the premises by that date.

---

[2] The letter was addressed to Mr. Chris Piche as manager of "AnyConnect, LLC" instead of AnyConnect US, LLC. Although Landlord argues the letter could not have terminated the Lease because it was addressed to the wrong entity, there is no dispute that Landlord intended to communicate the substance of the letter to Tenant regarding the Lease.

On March 29, 2018, Landlord, through counsel, wrote to Tenant

regarding its default. It demanded payment of past due rent, which Tenant still had

not paid, as well as rent for the remainder of the Lease, stating:

> Please be advised that I represent Williamsburg Place, LLC. I am writing on my client's behalf to notify you that you are in default of the lease agreement because of your failure to pay your rental obligation for November of 2017 through October of 2019, per the terms and period of your lease agreement. You have also failed to communicate with my client concerning your lease or to respond to his attempts to reach you.

> Please consider this letter as a demand for full payment of the past due amount and the amount due for breach of the lease agreement totaling $128,160.00. If you fail to pay as required my client will pursue any and all other rights and claims to which it is entitled under the law, including filing a lawsuit to collect the amount owed. A copy of the Complaint has been enclosed for your reference. If I do not hear from you or a representative from your company by April 6, 2018, I will proceed with litigation without further notice.

Landlord received no response to the letter and filed a lawsuit against Tenant in

Jefferson Circuit Court on April 18, 2018.

In its complaint, Landlord asserted a claim for $128,160 for rent due

under the Lease, pre-judgment interest at the legal rate, post-judgment interest,

costs, and "[a]ttorney fees, if applicable." In addition to Tenant, Landlord named

AnyConnect Corporation and Chris Piche as defendants.[3]  The defendants filed an answer and served written discovery, which Landlord answered on January 14, 2019.  Defendants AnyConnect Corporation and Mr. Piche then filed a motion to be dismissed as parties, which the trial court granted on June 27, 2019.

Neither party took further action in the lawsuit until Landlord moved for summary judgment on June 9, 2020.  Tenant opposed the motion and offered a judgment for $4,440.40 consisting of rent due for November 2017 and up to December 18, 2017, less the $4,000 security deposit.  The trial court granted Landlord's motion for summary judgment.

In its December 14, 2020 order granting summary judgment to Landlord, the trial court determined there was no dispute Tenant failed to pay rent under the Lease beginning November 2017 to the end of the Lease's term in October 2019, which totaled $128,160.  Regarding Landlord's December 8, 2017 letter, the trial court stated the letter "indicated its intent to assert its rights under the lease agreement, to include seeking rent for the duration of the agreement, repossession of the premises, attorney fees and costs."  It rejected Tenant's argument that the letter terminated Landlord's entitlement to rent beyond the date of the notice and found "the parties' lease agreement allows [Landlord] to take

---

[3] AnyConnect Corporation was Tenant's registered agent, and Mr. Piche was Tenant's manager. Landlord alleged these defendants were alter egos or instrumentalities of Tenant and each other.

possession of the premises upon a breach of the agreement without prejudicing its right to damages." The trial court further found "that the language contained within [Landlord's] written notice to [Tenant] was intended to formally notify of [Tenant's] breach of the lease agreement in accordance with its terms and did not operate to impose a limit on damages to which it would otherwise be entitled." The trial court awarded Landlord damages in the amount of $128,160, plus pre-judgment interest at 6%, attorney's fees, and costs. This appeal followed.

## STANDARD OF REVIEW

An appellate court's standard of review for a grant of summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[4] 56.03. The record must be viewed in a light most favorable to the non-moving party, and all doubts are to be resolved in its favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). "Because summary judgment involves only legal questions

---

[4] Kentucky Rules of Civil Procedure.

and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001).

This appeal also involves the construction and interpretation of a commercial lease agreement. The construction and interpretation of contracts, including questions of ambiguity, are matters of law subject to *de novo* review. *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003). The primary objective in construing a contract is to effectuate the intentions of the parties. *Cantrell Supply, Inc. v. Liberty Mutual Ins. Co.*, 94 S.W.3d 381, 384 (Ky. 2002). A contract must be construed as a whole, giving effect to all parts and every word if possible. *Id*. at 384-85. Absent an ambiguity, "the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence." *Id*. at 385. "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Id*. The fact that one party may have intended different results is insufficient to interpret a contract at variance with its plain and unambiguous terms. *Id*.

## ANALYSIS

We first consider Tenant's argument that the trial court erred because Landlord's "termination" of the Lease extinguished all rights and obligations under the Lease, including its obligation to pay rent for the remainder of the term. It

further argues paragraph 23(d) only entitles Landlord to retake possession of the Premises. Landlord, on the other hand, argues its letter merely notified Tenant of its default and provided an opportunity to cure. Landlord further argues that Tenant's December 15, 2017 email and actions in vacating the Premises prior to expiration of the cure period constitute an abandonment, and there was, therefore, no termination by Landlord. Alternatively, Landlord argues if the letter did terminate the Lease, it was entitled to do so under paragraph 23(d) of the Lease without prejudice to its right to claim damages.

In relevant part, Landlord's default notice letter states: "This is notice that your lease will be terminated and you must vacate the property by December 18, 2017, if we have not received your rent in full, by this date." It further requests Tenant to "[p]lease remit immediate payment . . . ." We first find no indication in this letter that Landlord intended to act in any manner other than in accordance with its rights under the Lease. Landlord referenced the "Oct. 21, 2016" Lease itself and, more specifically, paragraph 4 of the Lease relating to the amount of rent and when it was due. Also, Landlord's act of providing written notice to Tenant is consistent with its notice obligations under paragraph 18 of the Lease.

The record also reflects that Tenant, in response to this letter, vacated the Premises by December 18, 2017. There is no evidence in the record that

Tenant intended to vacate the Premises prior to its receipt of Landlord's December 8, 2017 letter or that it abandoned the Premises.

There is no dispute Landlord had the right under paragraph 23(d) of the Lease to retake possession of the Premises upon Tenant's failure to cure its default for nonpayment of rent. A similar term was interpreted in *Berry v. Riess*, 276 Ky. 114, 121 S.W.2d 942, 945 (1938). In *Berry*, the lease at issue contained a provision in which the lessee agreed, upon the suspension of its operations, to give lessor full and complete possession. The Court interpreted this term as an agreement by lessee to "peaceably and voluntarily surrender the leased property to the lessor without compelling the latter to resort to court proceedings . . . ." *Id*. The Court further stated: "The language does not purport to exonerate the lessee from responding in damage[s] that might be sustained by the lessor as a consequence of such suspension, or to in any wise curtail the latter's rights flowing therefrom." *Id*. In this case, the fact that Tenant vacated the Premises in response to Landlord's letter instead of forcing Landlord to initiate legal proceedings to evict it does not constitute an abandonment of the Lease by Tenant, as Landlord argues. Neither does it foreclose Landlord's right to recover damages for Tenant's default, as Tenant argues.

Further considering paragraph 23(d) of the Lease, we note it does not use the word "terminate" or "forfeit." It authorizes Landlord to take possession of

-10-

the Premises without further notice upon Tenant's failure to cure its default for nonpayment of rent. Landlord's right to possession under this term was not temporary or limited. It was absolute.

Absent a contractual provision providing otherwise, the nonpayment of rent, by itself, does not result in a tenant's forfeiture of the lease. *Estes v. Gatliff*, 291 Ky. 93, 163 S.W.2d 273, 276 (1942); *see also Morgan v. Chamberlain*, 156 Ky. 369, 160 S.W. 1066, 1067 (1913) (citation omitted) (stating "the rule is laid down as follows: 'A tenancy cannot be terminated for a breach of covenant by the lessee, where there is no provision in the lease for a forfeiture or a right of re-entry on the occurrence of the breach. This rule applies equally well . . . to a breach of covenant to pay rent . . . .'").

Paragraph 23(d) constitutes Tenant's agreement to forfeit the Lease upon its uncured default for nonpayment of rent. Clearly, Landlord's December 8, 2017 letter was intended to perfect its rights under that term. That Landlord's representative, who is not a lawyer, used the word "terminated" is not determinative, as Tenant argues. Landlord provided notice, an opportunity to cure, and a directive to vacate if Tenant failed to cure its default – all in accordance with the Lease. It is clear from the record that Tenant failed to cure its default and vacated the Premises. Thus, Tenant forfeited the Lease under paragraph 23(d) effective December 18, 2017.

-11-

We next consider damages. We first note that Landlord's right to possession is contained in the same sentence stating that recovering possession was without prejudice to its right to damages. Landlord was entitled to evict Tenant and pursue damages. This interpretation is consistent with our decision in *Nohr v. Hall's Rental, LLC*, No. 2011-CA-000646-MR, 2013 WL 462004 (Ky. App. Feb. 8, 2013),[5] upon which Landlord relies.

The lease in *Nohr* stated in relevant part: "[i]f default be made in any payment of said rent . . . Lessor may, after thirty (30) days' written notice to the Lessee and the Lessee has not corrected said default, declare the said term ended and enter into possession of said premises and sue for and recover all rent and damages accrued or accruing under this lease or arising out of any violation thereof . . . ." *Id.* at *2 (emphasis omitted). In concluding the landlord was entitled to seek recovery of future rent as it accrued under the lease, we stated:

> We agree with the trial court as we believe that the language of Paragraph 23 plainly allowed Hall's to seek recovery of any future rent obligation as it accrued under the terms of the lease. In our view, the fact that the lease authorized Hall's to "declare the [lease] term ended" did not cancel its right to also pursue "all rent . . . accruing under this lease." Instead, that language merely allowed Hall's to take action to evict Nohr *and* to pursue a claim for rent and damages against him. The fact that the word "and" is used as a connective term between the specified remedies supports the conclusion that they were not

---

[5] We cite *Nohr* pursuant to CR 76.28(4) as persuasive authority and to demonstrate consistency among appellate decisions in this Commonwealth.

> intended to be exclusive to one another. Moreover, the fact that the lease allows for collection of rent "accruing" even after eviction and repossession indicates that Nohr's requirement to satisfy his contractual rent obligation did not cease once same occurred.

*Id.* at \*4. Like *Nohr*, Landlord's remedies under this Lease are not exclusive of one another.

In this Lease, the term "damages" is not defined. The Lease contains no acceleration clause or other language specifically stating Landlord may recover rent for the remainder of the Lease's term. There is also, however, no language limiting the damages Landlord may recover, and the Lease term expired prior to entry of the summary judgment.

It is fundamental that "[i]n the case of a breach of contract, the goal of compensation is not the mere restoration to a former position, as in tort, but the awarding of a sum which is the equivalent of performance of the bargain [–] the attempt to place the plaintiff in the position he would be in if the contract had been fulfilled." *SEG Employees Credit Union v. Scott*, 554 S.W.2d 402, 406-07 (Ky. App. 1977). Tenant's argument that it had no obligation to pay rent after December 18, 2017 gives no effect to its agreement in paragraph 4 of the Lease to pay rent each month for the entire three-year term of the Lease. We conclude the

trial court did not err in awarding damages that included future rent under the Lease.[6]

Tenant next argues Landlord was not entitled to the amount awarded because it failed to mitigate its damages. According to Tenant, termination of the Lease made it impossible for Landlord to mitigate damages because it destroyed Tenant's rights under paragraph 16 to sublet or assign the Premises for the remainder of the Lease.[7] However, even before its default, Tenant did not have the absolute right to assign or sublet the Lease. Paragraph 16 of the Lease states: "Subletting and Assignment. Tenant will not assign this lease or sublet any part of the Premises without the written consent of Landlord. Landlord will not unreasonably withhold such consent." Tenant's right to assign or sublet the Lease was subject to Landlord's consent, and its argument that Landlord was obligated to give it an opportunity to assign or sublet the Lease is also inconsistent with its rights after default. *See Hall v. Rowe*, 439 S.W.3d 183, 186 (Ky. App. 2014) (citations omitted) (stating that "before one may obtain the benefits the contract

---

[6] We find no error in the trial court's award of such damages in their entirety in its December 14, 2020 order because the Lease's three-year term had already expired by that time. Prior to expiration of the Lease's term, however, Landlord was entitled to recover rental payments only as they became due under the Lease because there was no acceleration clause in the Lease. *Jordon v. Nickell*, 253 S.W.2d 237, 239 (Ky. 1952).

[7] It appears from the record that Tenant did not request Landlord's consent to assign or sublet the Lease at any time before or after its default.

-14-

confers upon him, he himself must perform the obligation which is imposed upon him."). Thus, Tenant's argument that part of Landlord's duty to mitigate included giving Tenant the opportunity to try and sublet or assign the Lease is contrary to the Lease and applicable law.

Tenant's argument regarding mitigation notwithstanding, Landlord was obligated to mitigate its damages when it regained possession of the Premises after Tenant's forfeiture.[8] It could mitigate by, among other things, entering into another lease. Amounts received by Landlord under a new lease would be applied towards satisfaction of Tenant's liability. *Jordon*, 253 S.W.2d at 238. It is not necessary for the Lease's remaining term to remain in effect or for Tenant's rights under the Lease to continue for Landlord to mitigate its damages, as Tenant argues.

Although we find Tenant's mitigation arguments to be without merit, we nevertheless conclude Landlord was not entitled to summary judgment on the issue of damages because there remain issues of material fact as to whether Landlord satisfied its duty to mitigate damages.

An injured party claiming damages for a breach of contract is obligated to use reasonable efforts to mitigate its damages resulting from the other

---

[8] The trial court did not discuss mitigation. Rather, it determined that Tenant vacated the premises. As stated above, Landlord recovered possession of the Premises upon Tenant's forfeiture of the Lease under paragraph 23(d). Tenant did not abandon the Premises in such a way as to negate any duty to mitigate, as Landlord argues under *Superior Woolen Company Tailors, Inc. v. M. Samuels & Company, Inc.*, 219 Ky. 539, 293 S.W. 1078 (1927), and *Jordon*, 253 S.W.2d at 238 (abandonment case versus default via non-payment of rent).

party's breach. *Deskins v. Estep*, 314 S.W.3d 300, 305 (Ky. App. 2010); *see also Morgan v. Scott*, 291 S.W.3d 622, 640 (Ky. 2009). The obligation to mitigate damages extends to cases where there has been a forfeiture of a lease and re-entry by the lessor because of the forfeiture. *Jordan*, 253 S.W.2d at 238.

Landlord argues it mitigated its damages by listing the Premises with a leasing agent. The record reflects that Landlord listed its property with a leasing agent between August 23, 2016 to February 23, 2017 and between May 1, 2017 to November 1, 2017. The record also evidences extensions with the leasing agent through April 30, 2018 and another extension through October 31, 2018. The listing agreement and applicable extensions relate to property located at 9400 Williamsburg Plaza, Louisville, Kentucky 40222. They do not, however, specify any particular efforts to lease the Premises here, which is Suite 220 at the same address. Also, the Lease's term expired October 31, 2019, and the listing agreements in the record extend only through October 31, 2018. We cannot, therefore, conclude based upon the record presently before us that there are no genuine issues of material fact as to Landlord's obligation to mitigate its damages. Thus, the trial court erred in granting summary judgment in favor of Landlord on the issue of damages because there exist genuine issues of material fact as to whether Landlord adequately mitigated its damages.

We next address the trial court's award of attorney's fees to Landlord. Kentucky follows the "American Rule." In the absence of a statute or a contract specifically or expressly providing for their recovery, attorney's fees are not allowable as costs or recoverable as an item of damages. *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 787 (Ky. 2017), *as corrected on denial of reh'g* (Mar. 22, 2018); *Dulworth & Burress Tobacco Warehouse Co. v. Burress*, 369 S.W.2d 129, 133 (Ky. 1963); *see also* KRS[9] 411.195 (stating provisions in writings that create a debt requiring the debtor to pay reasonable attorney's fees in the event of default shall be enforceable). Neither party directs the Court to a statute providing for the recovery of attorney's fees. The Court must, therefore, determine if paragraph 23(d) of the Lease entitles Landlord to recover them. We conclude it does not and hold the trial court erred in awarding attorney's fees to Landlord.

Paragraph 23(d) states in relevant part: "Tenant shall pay all costs, damages and expenses suffered by Landlord by reason of Tenant's defaults." Tenant argues there was no agreement for Landlord to recover attorney's fees, and Landlord is not entitled to recover them because the Lease fails to use the words "reasonable attorney fees" referenced in KRS 411.195. Landlord argues Tenant's

---

[9] Kentucky Revised Statutes.

-17-

reading of paragraph 23(d) is too narrow, and attorney's fees are included in paragraph 23(d)'s reference to "damages" and "expenses."

As stated above, in the absence of a statute or a contract specifically or expressly providing for their recovery, attorney's fees are not allowable as costs or recoverable as an item of damages. The word "express" is defined as "[c]learly and unmistakably communicated; directly stated." *Express*, BLACK'S LAW DICTIONARY (7th ed. 1999). In *Superior Steel*, for example, the Court found contractual language stating "[t]he prevailing party in any dispute . . . shall be entitled to recover from the other party reasonable attorneys' fees, costs and expenses . . ." to be broad enough to authorize the award of attorney's fees under appropriate circumstances. 540 S.W.3d at 787-88. Similarly, KRS 134.420(3), which states in relevant part "[t]he lien shall include all interest, penalties, fees, commissions, charges, costs, attorney fees, and other expenses . . . incurred" expressly provides for the recovery of attorney's fees. *Flag Drilling Co., Inc. v. Erco, Inc.*, 156 S.W.3d 762, 767 (Ky. App. 2005). In both examples, the recoverability of attorney's fees was directly stated.

In contrast, the plaintiff in *Deal v. First and Farmers National Bank, Inc.*, 518 S.W.3d 159 (Ky. App. 2017), filed an action against a bank under KRS 425.526, arguing she was entitled to recover costs and attorney's fees under the statute. KRS 425.526 provides for the recovery of costs but does not specifically

-18-

reference attorney's fees. Concluding the statute's language did not authorize an award of attorney's fees, this Court stated:

> While KRS 425.[526] allows a judgment debtor like Cindy to recover costs, it says nothing about attorney's fees. As a general rule . . . in the absence of a statute or contract expressly providing therefor, attorneys' fees are not allowable as costs. Since the statute does not expressly indicate that attorney's fees are recoverable, Cindy cannot hold the Bank liable for them.

*Deal*, 518 S.W.3d at 173 (internal quotation marks and citations omitted).

Like the statute in *Deal*, nowhere in paragraph 23(d) is there a specific, express, or direct reference to legal fees, attorney's fees, or similar terms. Nowhere in the Lease are the terms costs, damages, or expenses defined to include attorney's fees. Paragraph 23(d) of the Lease does not, therefore, provide for the recovery of attorney's fees, and the trial court erred in awarding them.

Last, Tenant argues the trial court's award of 6% prejudgment interest on the $128,160 in rent it found due under the Lease was excessive and constitutes an abuse of discretion. Tenant argues the trial court could only properly award prejudgment interest on the $4,440.40 due under the Lease through December 18, 2017. For the reasons stated below, we affirm the trial court's award of prejudgment interest.

As explained above, Landlord is entitled to damages that include rent beginning in November 2017 through the remainder of the Lease's term.

Paragraph 4 of the Lease states the amount Tenant agreed to pay each month for the duration of the Lease and when the rent was due. Landlord's claim for rent due under the Lease is, therefore, liquidated in nature. *See 3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metro. Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005) (citing 22 AM. JUR. 2D *Damages* § 469 (2004)) ("Liquidated claims are 'of such a nature that the amount is capable of ascertainment by mere computation, can be established with reasonable certainty, can be ascertained in accordance with fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values.'").

"The longstanding rule in this state is that prejudgment interest is awarded as a matter of right on a liquidated demand . . . ." *Id.*[10] It is not a matter of discretion in this case, as Tenant argues.

Tenant cites *Friction Materials Company, Inc. v. Stinson*, 833 S.W.2d 388 (Ky. App. 1992), for the proposition that prejudgment interest is only awarded in the trial court's discretion if justice and equity demand it. The language in *Friction Materials* to which Tenant refers is as follows: "The question is not so much whether a claim is liquidated or unliquidated, but whether 'justice and equity

---

[10] "[I]n determining if a claim is liquidated or unliquidated, one must look at the nature of the underlying claim, not the final award." *3D Enterprises Contracting Corp.*, 174 S.W.3d at 450 (emphasis omitted). Thus, Tenant's mitigation defense does not render Landlord's claim unliquidated and would potentially only affect the amount of damages upon which prejudgment interest would be based.

-20-

demand an allowance of interest to the injured party.'" *Id.* at 392. This is a partial quote from *Dalton v. Mullins*, 293 S.W.2d 470, 477 (Ky. 1956), which further elaborated on this principle by stating: "It is with this in mind that there has been promulgated the rule that even on unliquidated claims allowance of interest is discretionary with the court."

*Dalton*'s reference to the trial court's discretion is in the context of awarding prejudgment interest when claims are unliquidated. That "justice and equity" may, in the trial court's discretion, support an award of prejudgment interest when claims are unliquidated does not change the rule that when claims are liquidated, prejudgment interest shall be awarded as a matter of right. *3D Enterprises*, 174 S.W.3d at 450. The Court in *Friction Materials* reached the same conclusion, determining interest should follow as a matter of course:

> This is a breach of contract case, and although the amount claimed was vigorously disputed, the amount was readily ascertainable. Interest should follow as a matter of course for what is in substance an unpaid debt.

833 S.W.2d at 392.

Tenant further argues the award of prejudgment interest was improper because Landlord "protracted the litigation" by improperly joining additional defendants who were eventually dismissed and by waiting more than two years to file its motion for summary judgment. Tenant's argument is without merit. As stated above, Landlord's claim is liquidated, so interest is awarded as a matter of

-21-

right.  *3D Enterprises*, 174 S.W.3d at 450.  Also, it appears from the record that Tenant never moved for a trial date, and neither party pushed the litigation below with a sense of urgency.

Tenant also argues the trial court erred by not stating when prejudgment interest began to run.  Although the trial court's order does not specify when prejudgment interest commences, it is clear under Kentucky law that "[w]here under a contract a debt is due at a certain time, both reason and authority say that it carries interest from that time."  *Friction Materials*, 833 S.W.2d at 392; *see also Nucor Corp. v. General Electric Co.*, 812 S.W.2d 136, 144 (Ky. 1991) (citing RESTATEMENT (SECOND) OF CONTRACTS § 354 (1981)) ("If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due. . . .").  Here, Tenant agreed in paragraph 4 of the Lease to make rent payments in advance on the first day of each month.  Prejudgment interest, therefore, began to run on the second day of the month for each month Tenant failed to pay rent under the Lease.

## CONCLUSION

For the foregoing reasons, we affirm the Jefferson Circuit Court's order granting summary judgment as to Tenant's liability to Landlord for unpaid rent due under the Lease's three-year term and for prejudgment interest.  We

-22-

reverse the order as to the amount of damages awarded and its award of attorney's fees to Landlord and remand to the Jefferson Circuit Court for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Ilam E. Smith
Louisville, Kentucky

BRIEF FOR APPELLEE
WILLIAMSBURG PLACE, LLC:

T. Scott Abell
Louisville, Kentucky